**LAWYERS TITLE INSURANCE CORPORATION, a Virginia corporation, Plaintiff,**

v.

**WOLHAR & GILL, P.A., previously Robert C. Wolhar, Jr. and Associates, P.A., Harold W.T. Purnell, II, Esquire, and Lynn W. Moore, in his Capacity as Prothonotary of the Superior Court of the State of Delaware, in and for Sussex County, Defendants.**

Supreme Court of Delaware.

Submitted: Oct. 24, 1989.
Decided: April 23, 1990.

Judith Nichols Renzulli of Duane, Morris & Heckscher, Wilmington, for appellant in the U.S. Dist. Court.

James F. Bailey of James F. Bailey and Associates, P.A., Wilmington, for appellees in the U.S. Dist. Court, Wolhar & Gill, P.A. & Harold W.T. Purnell, II.

Barbara D. Crowell of Morris, James, Hitchens & Williams, Wilmington, for appellee in the U.S. Dist. Court, Lynn W. Moore.

Before CHRISTIE, C.J., MOORE and WALSH, JJ.

CHRISTIE, Chief Justice:

This proceeding relates to an action pending in the United States District Court for the District of Delaware seeking recovery of payments made by appellant, Lawyers Title Insurance Company, pursuant to a title insurance policy issued to Kenneth and Norma Miller insuring their title to property located in Sussex County. The defendants in the federal case are Wolhar & Gill, P.A. and Lynn W. Moore, the Prothonotary

of Sussex County. Wolhar & Gill allegedly failed to discover a lien of judgment (which had been transferred by writ of *testatum fieri facias* and which affected the property) prior to recording the deed which transferred the property to the Millers. The Prothonotary allegedly failed to index the lien within the statutory period prescribed by 10 *Del.C.* § 2304. All the parties involved in the litigation in the United States District Court have moved for summary judgment in that court.

Because the issues of law involve Delaware practice and procedure and because these issues have not been previously addressed by the Delaware Supreme Court, this Court accepted a certification by the District Court of the following issues: 1) whether a lien of judgment *testatum fieri facias* which was received, time stamped, and placed in the basket of incoming judgments in the Office of the Prothonotary, is sufficiently "entered of record" so as to be considered filed and indexed in order to provide notice to those persons conducting a title search of the property; 2) whether the doctrine of equitable conversion precludes a creditor's judgment lien from attaching to the debtor-vendor's real property during the executory period of a real estate contract; and 3) whether the Prothonotary is statutorily obliged to index incoming judgments on the day they are received pursuant to 10 *Del.C.* § 2304 and thus strictly liable for the failure to do so.

We rule today that: 1) a lien of judgment is deemed to be filed, indexed, and thus "entered of record" and binding upon the land of the judgment debtor in that county when it is time stamped in at the Office of the Prothonotary; 2) the doctrine of equitable conversion does not prevent a lien of judgment from binding the lands of a judgment debtor during the executory period of a contract for the sale of lands; and 3) in light of our ruling that the lien of judgment is deemed to be filed, indexed, and "entered of record" when time stamped in at the Office of the Prothonotary, that official is deemed to have done what he was required to do on the day the judgment was received.

On April 12, 1986, American Fuel Technologies, Inc. ("AFT") entered into a contract to sell property it owned in Sussex County to Kenneth and Norma Miller. The law firm of Wolhar & Gill, through its associate Harold W.T. Purnell, II, Esquire, represented the Millers in the property transfer. Settlement was to occur on or before July 3, 1986.

In preparation for settlement, Purnell requested on May 15, 1986, that Ticor Title Insurance Company ("Ticor") conduct a title search to the property. Purnell received the title search information from Ticor on June 10, 1986. The title search revealed that there was an open (as yet unsettled) estate in the chain of title. Wolhar & Gill ascertained that H. Edward Maull, Jr. was the attorney who was administering the estate. Since the estate was still open and would not be settled prior to the anticipated settlement date, Wolhar & Gill requested that Maull issue the title insurance policy to the Millers. Maull testified that he knew the estate in this case was a totally liquid estate and that it contained enough assets to pay all of the applicable taxes. Therefore, Maull agreed to issue the title insurance as agent for appellant Lawyers Title Insurance Company ("LTIC") and to insure the title of the property in the amount of $45,000, despite the fact that the estate would not be settled prior to settlement.

In the meantime, on June 16, 1986, a judgment was obtained in Superior Court in New Castle County against the seller of the property, AFT, in the amount of $153,-068.72. The judgment was recorded in New Castle County. On June 17, 1986, a *praecipe* was filed, directing the Prothonotary in New Castle County to issue a writ of *testatum fieri facias* (writ of *"fi fa"*) to the Prothonotary in Sussex County to transfer and extend the lien of judgment entered in New Castle County against AFT to Sussex County.

The writ was issued in New Castle County on June 30, 1986. The writ bears a stamp, with blanks filled in by hand, indicating that it was received by the Prothonotary in Sussex County on July 2, 1986 at

12:47 p.m. Sarah Washington, a clerk in the Office of the Prothonotary for Sussex County, testified that when judgments come into that office, they are clocked in by date and time and placed in the incoming judgment basket, which is located on a table next to the time clock. They are later entered into the appropriate docket. When a judgment is subsequently entered into either the judgment docket or the reverse judgment index, the entry date (or time) is not recorded. Although it was time stamped in on July 2, 1986, it appears that the lien of judgment on the property in this case was not written into the judgment indices in Sussex County until sometime after July 7, 1986.

Settlement took place on July 3, 1986 and the property was transferred from AFT to the Millers. Following the settlement, Purnell directed an employee of Wolhar & Gill to record the deed transferring the property to the Millers. A bring-down search was not conducted, either immediately prior to settlement or before recordation of the deed. On July 9, 1986, Wolhar & Gill sent a copy of the settlement sheet, recorder's receipt and a check for $175 to Maull, and requested that he issue the title insurance policy. As noted, Maull issued the policy for LTIC to the Millers in the amount of $45,000, effective as of July 3, 1986 at 4:26 p.m.

In early 1987, the Millers received notice of the lien against their property. On October 30, 1987, LTIC settled the claim based on the lien against the Miller property for $38,000. LTIC then filed an action in the United States District Court for the District of Delaware to collect the amounts paid out under the Millers' title insurance policy and the attorney fees incurred in connection with the claim. All parties to the action moved for summary judgment. On June 13, 1989, this Court accepted certification by the United States District Court on the issues outlined above.

This case arises pursuant to this Court's jurisdiction to hear and determine questions of law certified to it by the United States District Court for the District of Delaware. Del. Const. art. IV, § 11(9); Supr.Ct.R. 41.

### I.

We first determine when a lien of judgment, which is transferred from one county to another by a writ of *testatum fieri facias*, becomes binding upon the lands of a judgment debtor. The appellant, LTIC, contends that the lien of judgment was binding upon the judgment debtor at the time it was received, time stamped, and placed in the basket of incoming judgments in the Sussex County Prothonotary's office on July 2, 1986. LTIC argues that the time and date of its receipt are the sole factors to consider in determining when a lien is "entered of record." Appellee, Wolhar & Gill, argues that a judgment obtained in one county is not binding upon the lands of the judgment debtor located in another county until the writ of *fi fa* is written in the judgment docket and indexed against the defendant in the reverse judgment index by the Prothonotary.

The Delaware Constitution states that a judgment in one county shall not bind the lands or tenements in another county until a writ of *fi fa* is entered of record in the Office of the Prothonotary of the County wherein the lands are situated. Del. Const. art. IV, § 26. This constitutional provision limits the lien of judgment to the property of the judgment debtor located in the county in which the judgment is entered, unless and until the lien is transferred by writ to another county.

A writ of *fi fa* is the instrument for the transfer or extension of the lien from the county in which it is entered to another county in which the judgment debtor has land. 2 Wooley's Practice in Civil Actions § 1005 (1906). The Delaware Code requires the Prothonotary to index a writ of *fi fa* as a judgment. 10 *Del.C.* § 2304(b). The Code also requires that the judgment be indexed the same day it is entered or signed. 10 *Del.C.* § 2304(a). Both the constitutional and statutory provisions enable a judgment creditor to create a public record of liens encumbering lands or property in the county where property of a

judgment debtor is located. The public record, in turn, provides constructive notice to subsequent purchasers of the property of any liens or encumbrances affecting it.

 It is clear that a lien of judgment would be "entered of record" as required by the constitutional provision after it has been received, time stamped, and docketed in the judgment indices. *See* 2 Wooley's Practice in Civil Actions § 1007 (1906). However, in this case, we are presented with a situation where a writ was received, time stamped, and placed in the basket of incoming judgments at the Office of the Prothonotary, but not docketed in the judgment indices until several days later. We hold today that this procedure is sufficient to satisfy the indexing requirement of 10 *Del.C.* § 2304(a) and the "entry of record" mandate of the constitution.

As LTIC argues, the procedure followed in the Office of the Prothonotary itself suggests that the time and date of receipt in that office is the operative measure by which a lien is judged to have been indexed or entered of record.

When the writ is received in the Office of the Prothonotary in the receiving jurisdiction, the date and time of receipt is noted on the back of the writ, and the writ is placed into a basket of incoming judgments to await entry into the appropriate judgment indices. Ultimately, the Prothonotary enters the lien of judgment in the judgment docket and indexes it against the judgment debtor in the reverse judgment index. At no time does the Prothonotary note any time or date other than the precise time and date the lien of judgment was received in the office. There are no times or dates recorded, either on the judgment docket or in the reverse judgment index. Since the only time and date recorded in the receiving jurisdiction with respect to the lien of judgment is the time and date it is received in the Office of the Prothonotary, that time and date is the only available measure of when a lien is "entered of record."

The writ in this case was received in the Sussex County Prothonotary's Office on July 2, 1986 at 12:47 p.m. There is no evidence as to precisely what was done with the writ after receipt in Sussex County was noted. Further, there is no evidence as to when a notation of the judgment was docketed or written into the indices. However, it would appear that the writ remained in the basket of incoming judgments until sometime on or after July 7, at which time it was processed by the Prothonotary's clerk and written into the appropriate indices.[1]

We find that the above-mentioned procedures followed by the Prothonotary in processing judgments constitute sufficient, constructive notice of a lien of judgment to third parties. Testimony indicated that persons searching titles in that office are aware of these practices and, in fact, routinely check the basket of incoming judgments when searching a title. This Court takes judicial notice of the fact that it has long been an established procedure in Sussex County to "hunt the documents out."

Purnell testified that it is standard practice for a lawyer conducting a real estate closing to do a bring-down search for any undisclosed liens prior to recording the deed. That would include a search of the basket in which incoming judgments are kept before being docketed in the indices. LTIC's agent testified by deposition that he was experienced in real estate practice in Sussex County and that a title search, to be complete, should include a search of the basket containing the most recent judgments. In his opinion, it would have been negligent not to do so. Finally, Sarah Washington, the person responsible for processing judgments in the Sussex County Office of the Prothonotary, testified that title searchers working in the Prothonotary's Office know that they should search the judgment basket as well as the indices. If she were processing the incoming judgments during office hours, she would notify anyone searching a title of that fact.

---

1. John Ellis, Esquire, acting on behalf of the holder of the new mortgage, testified by affidavit that he searched the subject property on July 7, 8, or 9 and did not find the lien in the indirect judgment index. He did not search the basket.

She further testified that it is also a practice in the office to remind a new or unfamiliar person who is searching a title to "check the basket before you leave."

Finally, in the context of the *lis pendens* doctrine, this Court has previously held that the filing of the action itself is sufficient constructive notice of the claimed interest in the subject real property, and a separate recording of the notice would be superfluous. *See Cannelongo v. Fidelity America Small Business Investment Co.*, Del.Supr., 540 A.2d 435, 438 (1988). In light of practical considerations, actual practices and procedures in the Office of the Prothonotary and of those persons searching titles, and by analogy to another form of constructive notice, we rule that a lien of judgment is deemed to be filed, indexed, and thus entered of record and binding upon the judgment debtor when it is received and time stamped in at the Office of the Prothonotary.

## II.

Next, we must decide whether the doctrine of equitable conversion precludes a judgment lien from attaching to the debtor's real property during the executory period of a real estate contract. We hold that it does not prevent the judgment lien from attaching.

Appellee Wolhar & Gill contends that the doctrine of equitable conversion would operate so that the judgment against AFT could not defeat or impair the Millers' equitable interest or even constitute a lien on the land during the executory period of the sales contract. Appellant LTIC argues that the doctrine of equitable conversion does not apply to the facts of this case and, therefore, does not prevent a lien of judgment from binding the lands and tenements

of a judgment debtor during the executory period of a contract for the sale of land.

 Under the doctrine of equitable conversion, an executory contract for the sale of land, which requires the seller to convey legal title upon full payment of the purchase price, works an equitable conversion of the land. The execution of a contract for the sale of real property effectively transfers the seller's equitable interest in the land to the purchaser, and thereafter the seller merely retains a legal interest in the proceeds of the sales transaction. *Schmeusser v. Schmeusser*, Del.Supr., 559 A.2d 1294, 1298 (1989);[2] *Burris v. Wilmington Trust Co.*, Del.Supr., 301 A.2d 277, 279 (1972); *Briz–Ler Corp. v. Weiner*, Del.Supr., 171 A.2d 65, 67 (1961); *Marsh v. Marsh*, Del. Ch., 261 A.2d 540, 542 (1970). It is stated in 10 *Del.C.* § 4901 that real property may be seized and sold upon judgment and execution obtained, when no sufficient personal estate can be found. *See also Norman v. Goldman*, Del.Super., 173 A.2d 607 (1961). Further, it is settled Delaware law that all possible titles to real estate, equitable, contingent, or otherwise, are subject to sale upon judgment and execution, except an equitable interest under an *active* trust. *Hurd v. Hughes*, Del. Ch., 109 A. 418 (1920); 1 Wooley's Practice in Civil Actions § 807 (1906). LTIC thus contends that the ruling in the *Hurd* case and the statutory provisions of 10 *Del.C.* § 4901 render the distinction between legal and equitable title irrelevant in the situation before the Court. We agree.

 Wolhar & Gill does not dispute the rule set forth in the *Hurd* case, but argues that AFT held bare legal title to the property in an active trust for the benefit of the Millers during the executory period of the contract. Wolhar & Gill contends that the operation of the doctrine of equitable con-

2. It is obvious that there has been a transposition of the words "legal" and "equitable" in the section of the *Schmeusser* opinion which enunciates the doctrine of equitable conversion. It is settled law in Delaware (and in those other jurisdictions which recognize the doctrine) that the execution of a contract for the sale of real property effectively transfers the seller's *equitable* interest in the land to the purchaser, and thereafter the seller merely retains a *legal* inter-

est in the proceeds of the sale. *See Burris v. Wilmington Trust Co.*, Del.Supr., 301 A.2d 277, 279 (1972); *Briz–Ler Corp. v. Weiner*, Del.Supr., 171 A.2d 65, 67 (1961); *Marsh v. Marsh*, Del. Ch., 261 A.2d 540, 542 (1970). To the extent that the rule of law regarding equitable conversion in the *Schmeusser* opinion is inconsistent with the rule of law as set out in this opinion, that portion of the *Schmeusser* opinion is deemed to be a typographical error.

version places AFT's interest in the property in the active trust exception to the rule set forth in the *Hurd* case and thus the land was not subject to attachment and execution. We find Wolhar & Gill's reliance on the doctrine of equitable conversion and the active trust exception to the *Hurd* rule to be misplaced. The doctrine of equitable conversion clearly establishes that AFT, as the seller of the land, retained legal title to the property, while the Millers retained an equitable interest during the executory period of the contract. However, there was no active trust created in the equitable interest. AFT held legal title to the land for the benefit of the Millers until the date of settlement, but the equitable interest of the purchaser never became an asset of an active trust, and it remained subject to possible liens.

If AFT had satisfied the judgment out of the proceeds of the sale at the time of settlement, there would have been no further claim against the Millers' land. The judgment, however, was not satisfied at the time of settlement. Under the circumstances, we find that the doctrine of equitable conversion did not prevent the placement of a lien against the property.

### III.

 Finally, this Court is asked to decide whether the Prothonotary is obliged, pursuant to 10 *Del.C.* § 2304, to index incoming judgments on the day they are received in the Office of the Prothonotary and, therefore, whether the Prothonotary is strictly liable for failure to index the judgments on the day they are received.[3] LTIC and Wolhar & Gill both contend that the Prothonotary's statutory obligation to "index" means that the Prothonotary must actually enter the writ on both the judgment docket and the reverse judgment index on the day it is received in the Office of the Prothonotary. Thus, they argue that the entire process must be completed on

the same day that the judgment is entered or signed.

Appellee, the Prothonotary Lynn W. Moore, argues that the statutory indexing requirements of 10 *Del.C.* § 2304 were satisfied when the judgment was received, time stamped, and placed in the incoming judgment basket next to the time-clock. This Court has fully addressed and resolved this issue in Section I of this opinion where we ruled that the lien of judgment is deemed to be sufficiently "entered of record" so as to be considered filed and indexed when received, time stamped, and placed in the basket of incoming judgments in the Office of the Prothonotary. For the foregoing reasons, the answers to the questions certified are as listed in the third paragraph of this opinion.

---

**3.** 10 *Del.C.* § 2304(a) states in pertinent part: [The Prothonotary] shall index every judgment the same day it is entered or signed, except judgments entered in the appearance docket, which shall be transferred to the continuance docket and indexed within 2 weeks from such entry.