In the Matter of David A. SPENCER, Debtor.

Mohamed SOLIMAN and Union Mortgage Company, Appellants,

v.

David A. SPENCER, Appellee.

Civ. A. No. 90–44–JJF.

United States District Court, D. Delaware.

May 18, 1990.

472

Bayard W. Allmond, III, of Allmond Eastburn & Benge, Wilmington, Del., for appellee David A. Spencer.

John H. Newcomer, Jr., of Bayard Handelman & Murdoch, Wilmington, Del., for appellant Mohamed Soliman.

Jane W. Evans, of Evans & Evans, Wilmington, Del., for appellant Union Mortg. Co.

## OPINION

FARNAN, District Judge.

This appeal from an Order of the United States Bankruptcy Court for the District of Delaware requires this Court to analyze Delaware's common and statutory law concerning foreclosure of a debtor's property.[1] In particular, the Court must examine the effect which an automatic stay in a Chapter XIII bankruptcy proceeding has on rights which arise in the purchaser of a debtor's foreclosed property when that purchase is made at a sheriff's sale conducted prior to the debtor's filing of a Chapter XIII bankruptcy petition. This Court has jurisdiction pursuant to 28 U.S.C. § 158(a). 28 U.S.C.A. § 158(a) (West Supp. 1989). In bankruptcy appeals, a Federal District Court must review the Bankruptcy Court's factual findings to determine if those findings are clearly erroneous. Bankruptcy Rule 8013; *In re Morrissey*,

717 F.2d 100, 104 (3d Cir.1983). The District Court's review of the Bankruptcy Court's legal analysis is plenary and, therefore, the District Court may make a *de novo* determination of the correctness of the Bankruptcy Court's conclusions of law. *Brown v. Pennsylvania State Employees Credit Union*, 851 F.2d 81, 84 (3d Cir. 1988). To the extent that this appeal concerns only questions of law, the Court will engage in a *de novo* review of the Bankruptcy Court's decision.

## I. BACKGROUND

The facts underlying this case are undisputed. In late 1988, David A. Spencer was the owner of a residential property in New Castle, Delaware ("the Property"). The Property was subject to a first mortgage held by Lomas, USA ("Lomas") and a second mortgage held by one of the appellants in this case, Union Mortgage Company ("Union Mortgage" or "appellant"). Spencer, however, had fallen behind on his mortgage payments to both Lomas and Union Mortgage. In January of 1989, Union Mortgage filed a complaint in Delaware Superior Court seeking a judgment on Spencer's mortgage with Union Mortgage. In March of 1989, apparently after Spencer had not answered the complaint, Union Mortgage filed "Directions for Entry of Judgment by Default" in the Delaware Superior Court pursuant to a Delaware procedure allowing for the entry of a writ of *scire facias sur* mortgage ("*sci. fa.*"). The *sci. fa.* procedure required Spencer to show cause why the mortgage should not be foreclosed, a writ which Spencer apparently ignored.

Thereafter judgment was entered for Union Mortgage, and Union Mortgage requested the Delaware Superior Court to issue a writ of *levari facias* ("*lev. fac.*"). A *lev. fac.* is a writ of execution upon a judgment of *sci. fa. sur* mortgage directing a sheriff to sell land of a debtor in order to satisfy a judgment. The Sheriff's Sale ("Sheriff's Sale") was then scheduled for May 9, 1989. On May 8, 1989, Spencer paid

---

**1.** The Bankruptcy Court's decision is reported at 110 B.R. 144 (Bankr.D.Del.1989).

$2,748.08 of his debt and the Sheriff's Sale was stayed at Union Mortgage's request. On that day, Spencer attested in writing to Jane W. Evans, Esq., Union Mortgage's attorney, that,

> I, David A. Spencer, hereby affirm and certify that I will assign to Jane W. Evans, Esq., attorney for Union Mortgage, the check I receive from my mother's estate that has been placed in the mail on the 4th of this month by the attorney for my mother's estate. I understand that if this check is not received by her on or before May 12, 1989, my property will again be listed for Sheriff's sale.

Spencer subsequently paid Union Mortgage $4,315.06. On May 15, 1989, Evans wrote to Spencer to inform him that he still owed $1,153.71 plus interest and that the amount must be paid or the foreclosure sale would be rescheduled. On June 21, 1989, Evans wrote to Spencer again and reiterated the May 15, 1989 message about the payment of his debt and closed by informing Spencer that "I must hear from you."

Spencer never paid Union Mortgage the final $1,153.71. Consequently, Union Mortgage refiled its request for a writ of *lev. fac.* On October 10, 1989, the Sheriff of New Castle County, Delaware, sold the Property to satisfy Union Mortgage's judgment. Mohamed Soliman ("Soliman" or "appellant"), the other appellant in this matter, purchased the Property for $8,000. The purchase of the Property by Soliman was subject to the first mortgage in favor of Lomas. The first mortgage amounted to $54,267.17 and was in arrears $3,789.15. Consequently, Soliman is required to pay $66,056.32 for the Property. Spencer claimed in the Bankruptcy Court that the Property had an appraised value of $92,000, which means Soliman's payment would represent 71.8% of the Property's purported value.

Pursuant to Delaware law, the Sheriff's Sale had to be confirmed by the Delaware Superior Court and a confirmation hearing was scheduled for November 10, 1989. On November 9, 1989, Spencer filed objections to the Sheriff's Sale. A hearing on Spencer's objections was scheduled for November 21, 1989. However, the day before the hearing was held Spencer initiated this Chapter XIII proceeding and, as a result, the Bankruptcy Court issued an Order of Relief thereby putting in place an automatic stay of all civil judicial proceedings involving Spencer's property. Despite the Order of Relief, and over the objection of Spencer's attorney, the Delaware Superior Court held its confirmation hearing on November 21, 1989. The Delaware Superior Court, after hearing Spencer's objections to the sale, concluded that "there is no basis to set aside the Sheriff's Sale" and that "David A. Spencer's Application is hereby denied." Record on Appeal, Tab D at Exhibit A. The Delaware Superior Court's order, however, also provided that "confirmation of the sale is stayed pending clarification by the U.S. Bankruptcy Court." *Id.*

Soliman and Union Mortgage eventually moved the Bankruptcy Court for relief from the provisions of the automatic stay. Soliman and Union Mortgage argued that the stay should be lifted for three reasons: 1) that Spencer had no interest in the Property when he filed for bankruptcy and therefore the automatic stay did not affect the confirmation hearing; 2) that the hearing was merely voidable and not void and therefore the Bankruptcy Court should lift the stay to allow the Delaware Superior Court to confirm the sale, as it had expressed a willingness to do; and 3) that the automatic stay should be lifted for "cause" to allow the confirmation hearing to go forward because Soliman had attained a vested interest in the Property by virtue of his purchase at the Sheriff's Sale.

Spencer opposed the motion and on December 29, 1989, the Bankruptcy Court entered its Order, along with a Memorandum Opinion, denying the motion. The Bankruptcy Court began its opinion by noting that "[o]n the bankruptcy filing date, there was no decision on Spencer's application to set aside the sale. Therefore, Spencer, as legal owner, had a legal interest in the property." 110 B.R. 144, 145 (Bankr.D. Del.1989). Reaching Soliman's and Union Mortgage's first argument, the Bankruptcy Court concluded that "it is a *deed* that

passes the legal 'estate' which equates to a debtor's 'interest' in property. That interest became property of the bankruptcy estate on November 20 and is protected by the automatic stay provisions of [11 U.S.C.] § 362(a)." *Id.* (emphasis in original).

The Bankruptcy Court also rejected Soliman's and Union Mortgage's second argument concerning the voidability of the confirmation hearing and third argument concerning the lifting of the stay:

> Soliman and Union [Mortgage]'s alternative request for relief from stay to proceed with confirmation of sale must be denied. They assert as cause the Superior Court's decision that there is no basis to set aside the sheriff's sale. That may very well be, but absent an annulment of the stay, action taken in violation of § 362(a) is of no effect.
>
> Coupling wilful violation of the law—Soliman's insistence in going forward with the hearing despite the uncertainty as to the effect of the bankruptcy filing on the proceeding—with the fact that the property is worth significantly more than the total amounts due under the mortgages, the equities will not permit Soliman and Union [Mortgage] to prevail on their motion for relief.

*Id.* In essence, the Bankruptcy Court concluded that until confirmation of the Sheriff's Sale by the Delaware Superior Court, Spencer still owned the Property and consequently Soliman and Union Mortgage could not affect Spencer's federally protected interest.

Soliman and Union Mortgage filed a single notice of appeal of the Bankruptcy Court's decision and presented similar arguments seeking to overturn the decision in their separately filed briefs. Although those arguments were several in number, the appellants' most pertinent challenge concerns the Bankruptcy Court's conclusion with regard to the ownership of the Property. The appellants claim that equitable title vested in Soliman at the Sheriff's Sale and that confirmation by the Delaware Superior Court affects, at most, legal title to the Property. As a consequence of this argument, appellants assert

that "cause" exists to lift the stay. Spencer has opposed Soliman and Union Mortgage's appeal by contending that he is the legal and equitable owner of the Property because no title may pass in Delaware without confirmation.

With this background in place, the Court will focus on three issues which the Bankruptcy Court addressed:

> 1) Under the *sci. fa.* and *lev. fac.* procedures in Delaware, did legal and/or equitable title to the Property pass to Soliman at the time of the Sheriff's Sale but prior to the confirmation hearing?;
>
> 2) If Soliman did acquire an interest in the Property at the Sheriff's Sale, what effect does the automatic stay have on that interest?; and
>
> 3) If Soliman did acquire an interest in the Property at the Sheriff's Sale, does "cause" exist to lift the stay?

The analysis of these three questions depends, at least in part, on an understanding of the scope of the Bankruptcy Code's automatic stay provisions. The Court will, therefore, first discuss the stay provisions and then consider each question presented by this appeal in the order listed above.

## II. DISCUSSION

### A. *Automatic Stay Provisions of the Bankruptcy Code*

11 U.S.C. § 362(a) provides that a petition filed pursuant to Chapter XIII of the Bankruptcy Code operates as a stay of:

(1) the commencement or continuation, including the issuance or employment of process, of a judicial, administrative, or other action or proceeding against the debtor that was or could have been commenced before the commencement of the case under this title, or to recover a claim against the debtor that arose before the commencement of the case under this title;

(2) the enforcement, against the debtor or against property of the estate, of a judgment obtained before the commencement of the case under this title;

(3) any act to obtain possession of property of the estate or of property from the

estate or to exercise control over property of the estate;

(4) any act to create, perfect, or enforce any lien against property of the estate[.]

11 U.S.C.A. § 362(a)(1)—(4) (West 1979 & Supp.1989). As the Third Circuit Court of Appeals has recently noted about § 362, "[t]he scope of the automatic stay is undeniably broad." *Cuffee v. Atlantic Business and Community Development Corp. (In re Atlantic Business and Community Corp.)*, 901 F.2d 325, 327 (3d Cir.1990).

■ 11 U.S.C. § 541 describes the property of the estate to which the stay provisions of § 362(a) apply. Section 541(a)(1) brings within the ambit of the stay "all legal or equitable interests of the debtor in property as of the commencement of the case." 11 U.S.C.A. § 541 (West 1979). As with § 362, "the intended scope of this section is broad." *Cuffee,* 901 F.2d at 327. The scope, however, is not so broad as to bring interests not owned by the debtor under aegis of § 362. Section 541(d) provides that:

Property in which the debtor holds, as of the commencement of the case, only legal title and not an equitable interest, such as a mortgage secured by real property, or an interest in such a mortgage, sold by the debtor but as to which the debtor retains legal title to service or supervise the servicing of such mortgage or interest, becomes property of the estate under subsection (a)(1) or (2) of this section only to the extent of the debtor's legal title to such property, but not to the extent of any equitable interest in such property that the debtor does not hold.

11 U.S.C.A. § 541(d) (West Supp.1989). Section 541(d) "reiterates the general principal that where the debtor holds bare legal title without any equitable interest, that the estate acquires bare legal title without any equitable interest in the property." 124 Cong.Rec. 33999 (1978), *reprinted in* 1978 U.S.Code Cong. & Admin.News 6505, 6524. In determining when a debtor has a "legal" or "equitable" interest in property, the court must turn to state law as the determination of property rights in the assets of a bankruptcy estate is governed by state law. *Butner v. United States,* 440 U.S. 48, 54, 99 S.Ct. 914, 917, 59 L.Ed.2d 136 (1979). In this case, the automatic stay provisions of § 362, therefore, are limited to protection of those legal and equitable rights which Delaware law grants Spencer.

■ Even if property, however, passes into the estate and is protected by § 362's stay, a stay can be limited by a court in certain circumstances. Section 362(d) provides that:

(d) On request of a party in interest and after notice and a hearing, the court shall grant relief from the stay provided under subsection (a) of this section, such as by terminating, annulling, modifying, or conditioning such stay—

(1) for cause, including the lack of adequate protection of interest in property of such party in interest; or

(2) with respect to a stay of an act against property under subsection (a) of this section if—

(A) the debtor does not have an equity in such property; and

(B) such property is not necessary to an effective reorganization.

11 U.S.C.A. § 362(d)(1) (West Supp.1989). "Cause" under § 362(d)(1) is not limited to those situations where the property of a party lacks adequate protection in the bankruptcy estate. *See* L. King, 2 *Collier On Bankruptcy* ¶ 362.07(3) (15 ed. 1979). Instead, "cause" encompasses many different situations, including the situation where naked legal title to property has passed into the estate but equitable title is held by another party. *In re Lally*, 38 B.R. 622, 626 (Bankr.N.D.Iowa 1984), *aff'd*, 51 B.R. 204 (N.D.Iowa 1985). Accordingly, in order to reach the issue of cause, the Court must consider Delaware law in order to determine who possess legal and equitable title to the Property.

B. *Did Legal Title and/or Equitable Title Pass to Soliman?*

In order to determine who holds legal and equitable title to the Property, a brief discussion of the fundamental principles

underlying mortgages in Delaware is necessary. In some states, and under the law of England, from which the law of mortgages in the United States developed, a mortgage is held to be "a conveyance of the legal title with a defeasance, ... [by which] the mortgagee becomes the legal owner, subject to the right of the mortgagor to redeem the mortgaged property and have the reconveyance thereof on complying with the condition of the mortgage." *Malsberger v. Parsons*, 100 A. 786, 787 (Del.Ch.1917) (*"Malsberger II"*); *see also* 4 S. Symons, *Pomeroy's Equity Jurisprudence* § 1179–1187 (5th ed. 1941) (hereinafter *"4 Pomeroy"*). These states are known as "title" theory states because the mortgagee holds the legal title to the property until the mortgage is paid by the mortgagor. *See generally* 59 C.J.S. *Mortgages* § 1 (1949).

Delaware, however, has not followed the title theory but rather has adopted a "lien" theory. *In re Skelly*, 38 B.R. 1000, 1002 (D.Del.1984). *Woolley On Delaware Practice*, a treatise frequently cited by Delaware courts as an authoritative source of Delaware law [2], states that in Delaware "a mortgage is merely a security for the payment of a debt, or for the performance of some other condition." V. Woolley, 2 *Woolley On Delaware Practice* § 1353 (1906) (hereinafter *"Woolley"*); *see also Malsberger v. Parsons*, 75 A. 698, 701 (Del. Super.Ct.1910) (*"Malsberger I"*); *Fox v. Wharton*, 5 Del.Ch. 200, 226 (Del.Ch.1878). Thus, in Delaware a mortgage "is not a conveyance of the title in the land, and as a consequence the mortgagee acquires only a chattel interest, and cannot maintain ejectment for possession of the land." *Woolley* § 1353; *see also Cooch's Lessee v. Gerry*, 3 Del. (3 Harr.) 280, 281 (Del.Super.Ct.1840).

 If a mortgagor in Delaware defaults on his mortgage payments, the mortgagee may obtain a judgment of foreclosure in order to enforce the mortgagee's lien on the mortgagor's property. *Malsberger II*, 100 A. at 787. Upon the entry of the judgment, the mortgage is said to merge with the judgment of foreclosure with the attendant result that the mortgage no longer exists. *See In re Celeste Court Apartments, Inc.*, 47 B.R. 470, 476 (D.Del.1985); *White v. Bankers Mortgage Corp. (In re White)*, 22 B.R. 542, 543 (Bankr.D.Del.1982); *In re Monroe Park*, 18 B.R. 790, 791 (Bankr.D.Del.1982); *see also In re Roach*, 824 F.2d 1370, 1377–78 (3d Cir.1987) (discussing merger of mortgage in a judgment of foreclosure under New Jersey law).

 In order to satisfy its judgment, the mortgagee may apply for a writ of *lev. fac.*, which would direct a sheriff to sell the formerly mortgaged property at a sheriff's sale. As Delaware statutory law provides:

> Under a levari facias, awarded as described in this subchapter, the mortgaged premises shall be taken in execution, and after notice given in the same manner as in other cases of sale of lands upon execution process, shall be exposed to public sale....

Del.Code Ann. tit. 10, § 5065 (1975). The purchaser of the property at a sheriff's sale is entitled to a deed indicating the purchaser's ownership of the property but only after confirmation of the sale by the Delaware Superior Court. Section 4976 of the same title provides that:

> Upon confirmation by the court of any sale of lands and tenements, made by virtue of execution process, the sheriff, or officer making the sale, shall execute, acknowledge and deliver to the purchaser a good and sufficient deed for the premises so sold.

Del.Code Ann. tit. 10, § 4976 (1975); *see also* § 5065 ("upon such sale and confirmation thereof, [the property] shall be conveyed by deed to the purchaser"). As a result of these Delaware procedures, a two-

---

**2.** The Delaware Supreme Court frequently cites *Woolley* as a source of law. *See, e.g., Cannelongo v. Fidelity America Small Business Investment Co.*, 540 A.2d 435, 439 (Del.1988); *Atlas Subsidiaries of Delaware, Inc. v. Burns*, 202 A.2d 566, 568 (Del.1964). In addition, the Delaware Chancery Court and this Court have cited *Woolley* as authority on the law of mortgages. *See Elysian Federal Savings Bank v. Sullivan*, No. 10964, slip op., 1990 WL 20737 (Del. Ch. March 1, 1990) (LEXIS, States library, Del. file); *In re Skelly*, 38 B.R. 1000, 1002 & n. 2 (D.Del.1984).

part process must be employed in order to complete the execution of process on a judgment of foreclosure: 1) a sheriff's sale; and 2) a confirmation by the court.

The Bankruptcy Court ruled that confirmation plays the key role in the transfer of the foreclosed property from the sheriff to the purchaser. Specifically, the Bankruptcy Court concluded that, because of the automatic stay, there was no valid confirmation by the Delaware Superior Court; thus neither the legal or equitable title of Spencer passed to Soliman. Soliman argues that the Bankruptcy Court in reaching this conclusion ignored the equitable title he acquired as a result of his purchase of the Property at the Sheriff's Sale and that confirmation is a *pro forma* act which merely passes the legal title to him. Spencer responds that confirmation is required to pass the entire title, both legal and equitable, and that therefore no equitable interest arose in Soliman.

In order to resolve the issues concerning title to the Property, the Court must determine:

1) who holds legal title to the Property;
2) who holds equitable title to the Property;
3) the implications, if any, of Spencer's "equity of redemption"; [3] and
4) the legal effect of confirmation of a sheriff's sale by the Delaware Superior Court.

Accordingly, the Court will turn first to the issue of whether Spencer or Soliman holds legal title to the Property.

### 1. Legal Title to the Property

 Delaware courts have long recognized that "the legal title is not in the purchaser until a deed is executed." *Crawford's Lessee v. Green,* 1 Del. (1 Harr.) 464, 465 (Del.Super.Ct.1834). As the Delaware Supreme Court has held, "[t]he title of a purchaser at a sheriff's sale commences with the agreement of sale and is *consummated by the sheriff's deed, which passes the legal estate* and relates back to the day of sale." *Colt Lanes of Dover, Inc. v. Brunswick Corp.,* 281 A.2d 596, 600

n. 2 (Del.1971) (emphasis added). In addition, *Woolley* notes that "[t]he execution and delivery of the sheriff's deed is necessary to perfect the legal title." *Woolley* § 1148 (footnote omitted).

Furthermore, the Delaware statutes controlling *sci. fa.* and *lev. fac.* proceedings clearly require confirmation by a Delaware court in order to pass the sheriff's deed to a purchaser at a sheriff's sale. Section 4976 states the deed will pass "[u]pon *confirmation* by the court of any sale of lands" and § 5065 similarly provides that "upon such sale *and confirmation* thereof" the deed will pass to the purchaser. Del.Code Ann. tit. 10, § 4976 and § 5065 (1975) (emphasis added). Accordingly, the Court concludes that under Delaware law legal title to the Property purchased by Soliman at the Sheriff's Sale does not pass to Soliman until confirmation of the sale by the Delaware Superior Court and that, therefore, Spencer still retains legal title to the Property. The Court, however, reaches a different conclusion on the question of when equitable title passes to Soliman.

### 2. Equitable Title to the Property

 It has long been the law in Delaware that a purchaser who contracts to purchase from a seller a tract of land "is considered as the equitable owner from the time of signing the agreement or contract of sale." *Miles v. Wilson,* 3 Del. (3 Harr.) 382, 384 (Del.Super.Ct.1841); *see also Burris v. Wilmington Trust Co.,* 301 A.2d 277, 279 (Del.1972) (an agreement of sale for land creates an equitable interest in the purchaser of the land). As the Delaware Supreme Court has recently explained, an executory contract for "the sale of real property effectively transfers the seller's equitable interest in the land to the purchaser, and thereafter the seller merely retains a legal interest in the proceeds of the sales transaction." *Lawyers Title Insurance Corp. v. Wolhar & Gill, P.A.,* 575 A.2d 1148, 1153 (Del.1990). Accordingly, under an executory land contract, the seller's interest in land is equitably converted into an interest in money and the purchaser's interest is equitably converted into

---

**3.** The "equity of redemption" is explained in detail in Section II.B.3 of this Opinion.

an interest in real property. *See Briz–Ler Corp. v. Weiner,* 171 A.2d 65, 67 (Del. 1961); *see also John Flanagin & Sons v. Daws,* 7 Del. (2 Houst.) 476, 491 (Del.1861) ("an equitable interest in land [arises] ..., to at least, the extent of the amount of the purchase money").

■ The position of the purchaser under an executory contract is "the position in which the law places the purchaser at a sheriff's sale", *Miles,* 3 Del. (3 Harr.) at 384, and a conversion of interests similar to the conversion which happens pursuant to an executory contract occurs at a sheriff's sale.[4] As under an executory contract, the person whose land is being sold by the sheriff loses his equitable interest in land but receives an interest in money because in Delaware "money arising upon a sale of land under a decree of foreclosure stands in the place of the land itself". *Carlisle v. Parker,* 188 A. 67, 69 (Del.Super.Ct.1936). In exchange for the payment, the "purchaser of real property at a Sheriff's sale acquires an equitable interest in the property prior to the actual receipt of the deed." *Goldstein v. Mayor of Wilmington,* 447 A.2d 423, 424 (Del.1982). In fact, "[f]rom the day of purchase [the purchaser's] title begins, and he is considered the equitable owner". *Woolley* § 1148; *see also Colt Lanes of Dover,* 281 A.2d at 600 n. 2 (the "title of a purchaser at a sheriff's sale commences with the agreement of sale"). Thus, under Delaware law Soliman as the purchaser at the Sheriff's Sale is vested with equitable title to the Property. The Court therefore concludes that equitable title passed to Soliman at the Sheriff's Sale.[5] Despite this conclusion, the Court still must analyze Spencer's claim that his "equity of redemption," as that phrase is explained below, allows him to retain his title to the land.

3. Spencer's "Equity of Redemption"

Equity of redemption has different meanings depending on how state law views a mortgage. *See 4 Pomeroy* § 1188A. At the time of the concept's creation in England, equity of redemption meant simply the mortgagor's right to redeem his property in a court of equity. *See id.* § 1180. In Delaware, the equity of redemption is "the title to the mortgaged land, with the right to redeem it from the encumbrance of the mortgage." *Woolley* § 1353; *see Malsberger I,* 75 A. at 701. Relying on his interpretation of these principles, Spencer contends that until confirmation of the Sheriff's Sale by the Delaware Superior Court, he has a right to exercise his equity of redemption and thereby redeem his Property. Although he does not expressly assert the following, Spencer's position is interpreted by the Court as arguing that his equity of redemption is superior to Soliman's equitable title and that Soliman's interest in the Property is an interest subject to defeasance upon Spencer's exercise of his right of equity of redemption.

■ For their part, Soliman and Union Mortgage rely upon a recent decision of this Court sitting in its appellate role in a bankruptcy proceeding in claiming that Spencer lost his equity of redemption at the Sheriff's Sale. The Court in that case noted that "after an execution sale a mortgagor may not redeem his property because the sale discharges the land from all equity of redemption." *In re Skelly,* 38 B.R. 1000, 1002 (D.Del.1984). The appellants do not explore the reasoning which led the Court to such a conclusion but simply cite the case without extensive discussion. However, even a cursory reading of *Skelly* leads to the conclusion that the Court implicitly equated the creation of equitable

4. *Cf. Russell v. Equibank, N.A. (In re Russell),* 8 B.R. 342, 345 (Bankr.W.D.Pa.1980) (in Pennsylvania, "the purchaser [at a sheriff's sale]'s position prior to the delivery of the deed is that of a purchaser by the articles of a private sales agreement").

5. *Compare Russell,* 8 B.R. at 344–45 (in Pennsylvania, purchaser at a sheriff's sale gets equitable

title prior to confirmation of the sale) *with Fox v. Wharton,* 5 Del. Ch. 200, 220 (Del. Ch. 1878) (citing as relevant to Delaware law conclusion of Pennsylvania Supreme Court that a sheriff's sale extinguishes a mortgagor's equitable interest).

ownership in a purchaser at a sheriff's sale with the cancellation of the equity of redemption in a mortgagor. Accordingly, the unstated premise of the appellants' argument, and of *Skelly*'s conclusion, is that in Delaware a mortgagor's equity of redemption is no more than his equitable ownership of the mortgaged property. The Court is persuaded that such a conclusion is warranted by Delaware statutory and case law.

First, in Delaware the equity of redemption "is considered to be the real and beneficial estate, tantamount to the fee at law". *Fox*, 5 Del.Ch. at 226; *see also* 4 *Pomeroy* § 1180 ("the person therefore entitled to the equity of redemption is considered as the owner of the land"). As *Pomeroy* similarly notes of equitable ownership:

Equity first introduced the principle that in all transactions of men concerning land,—their transfers and bargains,—the consideration is the essential fact which determines the real beneficial ownership, wherever legal title may be vested. The consideration draws to it the equitable right of property; the person from whom the consideration actually comes, under whatever form or appearance, is the *true and beneficial owner.*

S. Symons, 3 *Pomeroy's Equity Jurisprudence* § 981 (5th ed. 1941) (emphasis added) (hereinafter "3 *Pomeroy*").

Second, in Delaware the rights granted by equitable ownership and the equity of redemption are extinguished by a foreclosure sale, thereby indicating the unity of the two concepts. Under Delaware law the right of foreclosure and the right of redemption share a "mutuality [which] necessarily arises from the nature and character of a mortgage." *Fox*, 5 Del.Ch. at 217. Thus in Delaware, "the right of redemption and the right of foreclosure, ..., are coexisting and mutual rights." *Id.* Such mutuality implies that the exercise of foreclosure rights, including the process of execution, extinguishes the equity of redemption. Consequently, after a foreclosure

judgment and execution both the equity of redemption and equitable ownership are extinguished.[6]

Third, Delaware statutory law indicates that the equity of redemption is cut off by a sheriff's sale:

The person to whom any lands and tenements *shall be sold, or delivered,* under § 5065 of this title, and his heirs and assigns, shall hold the same, with their appurtenances, for such estate, or estates, as they were sold, or delivered for, *discharged from all equity of redemption,* and all encumbrances made and suffered by the mortgagor, his heirs, or assigns; and such sale shall be available in law.

Del.Code Ann. tit. 10, § 5066 (1975) (emphasis added). The use of the disjunctive "or" in the above quoted statute and the placement of the comma after "sold" ("shall be sold, or delivered, ...") indicates that sale of the property is sufficient to cancel the equity of redemption. *See Reiter v. Sonotone Corp.*, 442 U.S. 330, 339, 99 S.Ct. 2326, 2331, 60 L.Ed.2d 931 (1979) ("terms connected by a disjunctive [should] be given separate meanings"); *United States v. Naftalin*, 441 U.S. 768, 774 n. 5, 99 S.Ct. 2077, 2082 n. 5, 60 L.Ed.2d 624 (1979) (where punctuation marks "reaffirm conclusions drawn from the words themselves they provide useful confirmation" of the statute's meaning). Furthermore, such a reading of the statute prevents "an unreasonable, absurd or unworkable result" because such a reading gives a "sensible and practical meaning to [the] statute" in light of the interpretation by Delaware courts of equitable ownership, the equity of redemption and foreclosure sales. *E.I. Du Pont de Nemours & Co. v. Clark*, 88 A.2d 436, 438 (Del.1952).

Finally, Pomeroy notes that in "lien" states such as Delaware the equity of redemption is "cut off and divested by a sale under a decree of foreclosure". 4 *Pomeroy* § 1188A; *see also* 4 *Pomeroy* § 1219

---

**6.** *Cf. Federal National Mortgage Association v. Shirley (In re Shirley)*, 30 B.R. 195, 196 (Bankr. D.Md.1983) (under Maryland law foreclosure sale cuts off all equity of redemption); *In re*

*Butchman*, 4 B.R. 379, 380 (Bankr.S.D.N.Y. 1980) (under New York law foreclosure of mortgage and sale of property cuts off equity of redemption).

and § 1228 (stating the same conclusion).[7] Therefore, Spencer's equity of redemption was cut off by the Sheriff's Sale ·and he lost his equity of redemption at the same time he lost equitable ownership, with the result that Spencer has no equitable interest left in the Property. Consequently, the Court rejects Spencer's argument that he retains an equity of redemption which has the capacity to subject Soliman's equitable ownership to defeasance. Despite this conclusion, the Court must still determine the role which confirmation plays in the context of this case before the Court can move on to determine the answers to the other questions presented by this appeal.

4. Confirmation of the Sheriff's Sale by the Delaware Superior Court

██ Despite the indications of Delaware case law, Spencer argues that confirmation serves to pass all interest in the Property. Relying on a passage in a general treatise on American law, he asserts, in the words of the text writer, that "the highest bid at a judicial sale is only ·an offer of purchase, which is subject to the approval or disapproval of the court". 47 Am.Jur.2d *Judicial Sales* ·§ 218 (1969) (footnotes omitted). Spencer thus claims that there is no "sale" until the acceptance by the Delaware Superior Court of Soliman's offer. The fault in Spencer's argument lies in his reliance on the general treatise of law. The text, and Spencer, do not recognize that there are at least two theories on the role of confirmation. As the New Jersey Supreme Court stated in discussing the available theories:

So if it is answered that the equity of redemption survives until confirmation of the sale, the rationale is available that the sheriff's sale is but an imperfect contract dependent ultimately upon the

---

**7.** *Pomeroy* divides analysis of the American law of mortgages into two categories. 4 *Pomeroy* §§ 1186–1188A. In a general way, the two categories mirror the division between states which adopt a "lien" theory of mortgage and states which adopt a "title" theory of mortgage. The first category address those states which generally adopt the title theory in some form. *Id.* §§ 1187–1187A. Title theory states grant the mortgagee title to the mortgagor's property. Other rights usually are given to the mortgagee in such states, such as the right to bring an action for ejectment. An action for ejectment allows the legal owner to remove a person who is unlawfully in the possession of the legal owner's property, including a mortgagor who has defaulted on his mortgage. *See generally,* 25 Am.Jur.2d *Ejectment* § 23 (1966); 55 Am.Jur.2d *Mortgages* § 199–202 (1971).

In the second category, *Pomeroy* lists those states which adopt a lien theory. 4 *Pomeroy* §§ 1188–1188A. In such states, the mortgagor is the legal owner of the property and the mortgagee the lien holder. Generally, the mortgagee in lien theory states cannot bring an action for ejectment because the mortgagee is not the legal owner. *See Crawford's Lessee v. Green,* 1 Del. (1 Harr.) 464, 465 (Del.Super.1834). Pomeroy places Delaware in the first category but notes that except for one feature of Delaware law, "the state should be placed in the second class." 4 *Pomeroy* § 1187.

The text explains "that upon a breach of the condition [of the mortgage] the mortgagee may recover possession from mortgagor in ejectment, and this is the *single feature* which ranges the state in the first class." *Id.* (emphasis added). *Woolley* appears to be in disagreement with the interpretation of Delaware's law of ejectment given in *Pomeroy.* As *Woolley* notes, a mortgagee in Delaware "cannot maintain ejectment for the possession of the land." *Woolley* § 1353 (footnote omitted). In addition, a case to which both *Woolley* and *Pomeroy* cite states that a mortgagee "cannot in this State ... maintain an action for ejectment against a mortgagor in possession, *even after condition broken* ". *Fox,* 5 Del. Ch. at 227 (emphasis added).

In Delaware, "mere equitable title will not support an action for ejectment." *Burris v. Wilmington Trust Co.,* 301 A.2d 277, 279 (Del.1972). Therefore, in order to maintain an action for ejectment, a plaintiff must prove that he has legal title. 28 C.J.S. *Ejectment* § 8 (1949). The action, however, does not create rights, such as a purchase at a sheriff's sale would. Therefore, an action for ejectment would have no effect on, and indeed is only concerned with, rights already created by a legal contract entered into or legal proceeding occurring prior to the action for ejectment. *Id.*

Consequently, *Pomeroy* 's placement of Delaware in the first class because of his interpretation of Delaware's law of ejectment has little bearing on this Court's analysis of when Spencer's equity of redemption was cut off. Accordingly, given that *Pomeroy* clearly considers Delaware to be a lien theory state in all respects other than his interpretation of Delaware's law of ejectment, the Court applies *Pomeroy* 's comments regarding lien theory states to Delaware. This interpretation of *Pomeroy* is supported by his discussion of lien theory states, wherein he drops a footnote to indicate that Delaware "might perhaps be added" to inclusion in the second class. 4 *Pomeroy* § 1188A n. 2.

approval of the court. And if the sale is held to end the equity of redemption at once, that answer may be as easily placed within the concept stated for other purposes that a sale is defeasible only for some overriding equity, and if confirmed, the confirmation relates back to the date of sale.

*Hardyston National Bank of Hamburg v. Tartamella,* 56 N.J. 508, 267 A.2d 495, 497 (1970). For the reasons stated below, the Court concludes that Delaware's confirmation procedure fits within the second theory and, therefore, Spencer's "acceptance" theory must be rejected.

█ The Delaware Superior Court's power to confirm a sheriff's sale is strictly limited and thus not akin to the power normally exercised by an offeree to freely decline any offer. For example, Delaware Superior Court Civil Rule 69 provides that "all [sheriff's] sales not objected to ... shall ... be confirmed *as a matter of course.*" Del.Code Ann. vol. 17, Super.Ct. Civ.R. 69(d) (1975) (emphasis added); *see also Woolley* § 1107 (when there is no objection, confirmation is a "matter of course, without any act or decree of the court"). Accordingly, when there is not an objection, the Delaware Superior Court performs, without judicial scrutiny or consideration of the agreement of sale, the merely ministerial task of approving the sale.

█ When objections are interposed, the Delaware Superior Court is not vested with *de novo* power to set aside the sale for whatever reason the Court pleases, as one might expect if Spencer's "acceptance" theory adhered. Instead, when objections are lodged, the Delaware Superior Court's judicial scrutiny of the sheriff's sale only examines whether "the defaulting obligor has received just treatment *in the execution process.*" *Home Beneficial Life Insurance Co. v. Blue Rock Shopping Center, Inc.,* 379 A.2d 1147, 1149 (Del.Super. Ct.1977) (emphasis added). The Delaware Superior Court is thus only concerned with

defects in such matters as the service of process, *McNatt v. Colegrove,* 445 A.2d 336 (Del.1981) (full text of opinion on LEXIS, States library, Del. file), the advertisement of the sale and description of the property in the levy, *Atlas Subsidiaries of Delaware, Inc. v. Burns,* 202 A.2d 566, 568 (Del.1964), and whether the price obtained was an "inadequacy of price sufficiently great to shock the sense of the Court." *In re Downham Co.,* 165 A. 152, 153 (Del.Super.Ct.1932); *see also Girard Trust Bank v. Castle Apartments, Inc.,* 379 A.2d 1144, 1145–47 (Del.Super.Ct.1977).

In addition, Delaware courts have long recognized that the right to set aside a sheriff's sale rests upon "that control or authority over its own processes, which the court would exert in any other case, for the correction of abuses or the prevention of injury." *In re Seaford Hardware Co.,* 132 A. 737, 738 (Del.Super.Ct.1926).[8] Thus, when the Delaware Superior Court reviews objections and decides to set aside a sale, the power exercised is not similar to the power to decline an offer made by a prospective purchaser. *See, e.g., Central Trust & Savings Co. v. Chester County Electric Co.,* 77 A. 771, 771–72 (Del. Ch. 1910) (definite offer of higher bid received after sale but before confirmation is not enough to set aside sale). Rather, the power to set aside a sale exercised by the Delaware Superior Court is more akin to the power used by a Delaware court when it refuses to enforce a contract on the grounds that the contract violates the public policy supporting the administration of justice. *See Johnson v. Higgins,* 108 A. 647, 648 (Del.Super.Ct.1917) (refusing to enforce a contract as its terms "may injuriously affect the administration of public justice").

Furthermore, in Delaware, confirmation only serves to give the court's imprimatur to a sale which has already occurred. As Delaware courts have consistently noted,

---

**8.** *See also Vineland Syrup, Inc. v. Papantinas,* No. 87C–JN–109, slip op., 1989 WL 5220 (Del.Super.Ct. January 3, 1989) (LEXIS, States library, Del. file); *Central National Bank of Wilmington v. Industrial Trust Co.,* 51 A.2d 854, 856 (Del.Super.Ct.1947); *In re Adair,* 190 A. 105, 107 (Del. Super.Ct.1936) (all cases discussing the court's power at confirmation as concerned with abuse of the court's processes).

title arises from the date of the sale. *See, e.g., Colt Lanes of Dover*, 281 A.2d at 600 n. 2. Thus, the confirmation relates back to the date of sale, *id.*, and it is from such date that all things of worth are measured, such as the entitlement to rent from the property. Del.Code Ann. tit. 10, § 4978 (1975); *see also Stayton v. Morris*, 4 Del. (4 Harr.) 224, 226 (Del.Super.Ct.1845). Accordingly, in Delaware it is "the equitable interest and not the bare legal title in the property which [has] value to the purchaser." *Hogg v. Walker*, No. 9090, slip op., 1989 WL 128572 (Del. Ch. October 26, 1989) (LEXIS, States library, Del. file).

Therefore, the Court concludes that under Delaware law confirmation is designed only to assure the Delaware Superior Court that its processes were not abused and serves only to pass the bare legal title and thereby join that legal title with the interest which has the value, the equitable title. Given this conclusion, the Court must next turn to a consideration of the effect which the automatic stay under § 362(a) has on Spencer's legal title and on Soliman's equitable title. In so doing, the Court will examine the conclusions reached by the Bankruptcy Court on the scope of the automatic stay.

### C. *What Effect Does the Automatic Stay Have On Soliman's Equitable Title?*

In ruling upon the scope of the automatic stay, the Bankruptcy Court concluded that:

> Soliman and Union [Mortgage]'s reliance on *Miles v. Wilson*, 3 Har. 382 (Del.Super.1841), and *Colt Lanes of Dover, Inc. v. Brunswick Corp.*, 281 A.2d 596 (Del.1971) is misplaced. A close reading reveals that it is a *deed* that passes the legal "estate" which equates to a debtor's "interest" in property. That interest became property of the bankruptcy estate on November 20 and is protected by the automatic stay provisions of § 362(a).

110 B.R. at 145 (emphasis in original). Thus, the Bankruptcy Court found that Spencer's *legal* title to the Property passed into the bankruptcy estate on November 20, 1989 and was thereby protected by the stay. The Bankruptcy Court's analysis, however, did not specifically address the effect of the stay on the equitable title to the Property.

However, in discussing whether cause existed to lift the stay, the Bankruptcy Court noted that the "equities will not permit Soliman and Union [Mortgage] to prevail on their motion for relief" because, *inter alia*, "the property is worth significantly more than the total amounts due under the mortgages". 110 B.R. at 145. Such a conclusion requires the assumption that equitable and legal title are held by Spencer because naked legal title would not have such value by itself. *Hogg v. Walker*, No. 9090, slip op. 1989 WL 128572 (Del.Ch. October 26, 1989) (LEXIS, States library, Del. file); *see also 3 Pomeroy* § 982 (equitable ownership of land confers value while the "naked legal estate" confers "no beneficial rights of enjoyment whatsoever"). Therefore the Bankruptcy Court implicitly found that Spencer still possessed equitable title to the Property and, in making such a finding, thus ignored Soliman's equitable title to the Property.

In Delaware, equitable ownership from a sheriff's sale is so respected that it is a constitutionally protected property right. *Gelof v. First National Bank of Frankford*, 373 A.2d 206, 208 (Del.1977). Consequently, after a sheriff's sale, "there are no substantial federal interests that would justify ignoring property interests created by" Delaware law. *In re Roach*, 824 F.2d 1370, 1377 (3d Cir.1987). Furthermore, § 541(d) provides that equitable title to property belonging to a person other than the debtor does not pass into the bankruptcy estate. 11 U.S.C.A. § 541(d) (West Supp.1989). Thus, to the extent that the Bankruptcy Court concluded that legal title passed into the bankruptcy estate, the Bankruptcy Court was correct. But to the extent that the Bankruptcy Court's opinion rests on the assumption that equitable title passed into the bankruptcy estate and was therefore protected by the automatic stay, the conclusion must be reversed. Given these conclusions, the Court must next de-

termine whether "cause" exists to lift the stay under § 362(d).

### D. *Does "Cause" Exist to Lift the Stay?*

 Soliman and Union Mortgage claim, as they did in the Bankruptcy Court, that Soliman's ownership interest in the Property presents adequate reason to lift the stay.[9] In making its decision, the Bankruptcy Court concluded that such cause did not exist because:

> Coupling wilful violation of the law— Soliman's assistance in going forward with the hearing despite the uncertainty as to the effect of the bankruptcy filing on the proceeding—with the fact that the property is worth significantly more than the total amounts due under the mortgages, the equities will not permit Soliman and Union [Mortgage] to prevail on their motion for relief.
>
> \* \* \* \* \* \*
>
> A major purpose of the Bankruptcy Code is to give a debtor a "fresh start". Spencer is entitled to be a debtor and must be given the opportunity. Spencer stands to lose his home; Soliman stands to lose a bargain. Union [Mortgage] will suffer a delay in payment.

110 B.R. at 145. The Bankruptcy Court's analysis of the "equities" of the situation presents an appealing resolution of the issues in this case but the "equities" are not controlling on the issue of "cause".

First, the Bankruptcy Court's analysis of the equities of the situation proceeds from the assumption that equitable title passed into the estate. It did not. *See post* Section II.B.2. As stated previously, equitable title and legal title are split and the Bankruptcy Court's opinion did not address how such a split title affects the analysis of "cause" under § 362(d).

Second, even a consideration of the equities in this case should not ignore that the *lev. fac.* procedure in this action provided Spencer with "ample opportunity to exhaust the possibility of settlement and to file the petition before the state proceeding progress[ed] to final judgment." *In re Roach*, 824 F.2d at 1378. Similarly, consideration of the equities in this case should not ignore the interests of the Delaware state court system in the orderly administration of justice and justice's processes, especially when state law grants rights which cannot be affected by a bankruptcy petition. *Cf. In re Stanley Engineering Corp.*, 164 F.2d 316, 319–20 (3d Cir.1947) (discussing the role of judicial sales in bankruptcy), *cert. denied*, 332 U.S. 847, 68 S.Ct. 351, 92 L.Ed. 417 (1948).

Third, the mere desire to retain a home for a debtor is not enough under the bankruptcy law to keep the property in the bankruptcy estate if other valid reasons exist to lift a stay. *See, e.g., Kehm v. Citicorp Homeowners Service, Inc. (In re Kehm)*, 90 B.R. 117, 123 (Bankr.E.D.Pa. 1988); *In re Gregory*, 39 B.R. 405, 409–10 (Bankr.M.D.Tenn.1984); *Pennsylvania State Employees' Retirement Fund v. Gardner (In re Gardner)*, 14 B.R. 455, 456 (Bankr.E.D.Pa.1981).

And finally, consideration by a bankruptcy court of the equities of a situation is

---

9. Appellants also argue on appeal, as they did in the Bankruptcy Court, that the confirmation hearing conducted by the Delaware Superior Court on November 21, 1989 is only voidable and not void. Thus they request the Court to engage in a two-step process. First, they request the Court to consider on its merits the Delaware Superior Court's conclusion that Spencer's objections to the Sheriff's Sale were inadequate to set aside the sale. Then they ask the Court to decide that, because of the merits of the state court's conclusion, the sale should be held valid under this Court's power to find the confirmation hearing not void. The Court does not accept the appellants' invitation to engage in such bootstrapping reasoning. Proceed-

ings conducted in violation of a bankruptcy stay are "void and without effect." *In re Ward*, 837 F.2d 124, 126 (3d Cir.1988).

In addition, the appellants present, as they did to the Bankruptcy Court, another argument seeking to uphold the state court's decision. They argue that § 362 only stays actions against a debtor, not actions which the debtor initiates against another. They contend that Spencer's filing of objections constitutes an action brought by Spencer. The Court rejects this argument as the filing of the objections are the mere continuation of the execution writ of *levari facias*. Therefore, Spencer's action cannot be considered an original action against Soliman. *See In re Adair*, 99 A. 45, 46 (Del.Super.Ct.1916).

limited by the "statutory structure of the court. A bankruptcy court has only the prescribed powers of existing bankruptcy statutes plus the powers necessarily implied to permit it to carry out the enumerated powers." *United States v. Crawford (In re Crawford)*, 2 B.R. 589, 597 (Bankr. N.D.Ill.1980). In this case, "the statutory structure of the court" required the Bankruptcy Court to consider if cause existed to lift the stay within the meaning of § 362(d).

In analyzing § 362(d), courts have concluded that when a purchaser receives equitable title at a sheriff's sale but legal title remains in a debtor and that debtor thereafter files for bankruptcy, "cause" exists to lift the stay to allow the equitable owner to gain the legal title. *In re Lally*, 38 B.R. 622, 626 (Bankr.N.D.Iowa 1984), *aff'd*, 51 B.R. 204 (N.D.Iowa 1985); *see also Federal National Mortgage Association v. Shirley (In re Shirley)*, 30 B.R. 195, 196 (Bankr.D. Md.1983) (lifting automatic stay when purchaser has received equitable title at a sheriff's sale but court does not expressly refer to § 362). In addition, other courts have recognized that where there is a split between equitable and legal title and the debtor retains mere legal title, the court should allow equitable title to be united with legal title. *See Boyd v. Martin Exploration Co.*, 56 B.R. 776, 781 (E.D.La. 1986) ("When it appears that a debtor is only a trustee and has no beneficial interest in or claim against the property, the court ought to turn it over to the true owner whenever possible."); *Central Trust Co. v. Shepard (In re Shepard)*, 29 B.R. 928, 932 (Bankr.M.D.Fla.1983) (where bankruptcy trustee acquires bare legal title to property, "this interest is of no value to the estate and the trustee will be required to reconvey the property to the beneficial owner"). Thus, it appears to the Court that "cause" exists to lift the stay because if the stay is not lifted, the bankruptcy estate would only have naked legal title, which is arguably of little or no value to the bankruptcy estate.

Therefore, the Court concludes that because Spencer holds only bare legal title and Soliman holds the equitable title to the Property, which is the title which has real

value under Delaware law, the Court must reverse the decision of the Bankruptcy Court on the issue of "cause" and lift the stay to allow the Delaware Superior Court's confirmation hearing to proceed.

## III. CONCLUSION

For the reasons stated above, the Court concludes that the decision of the Bankruptcy Court must be affirmed to the extent that the Bankruptcy Court held that legal title to the Property passed into the bankruptcy estate. The decision must be reversed to the extent that the Bankruptcy Court held that Soliman's equitable interest passed into the bankruptcy estate and that "cause" did not exist to lift the stay to allow the confirmation hearing on the Sheriff's Sale to go forward.

An appropriate Order will be entered.