**Carol SCHMEUSSER, Petitioner Below, Appellant, Cross–Appellee,**

v.

**Lloyd F. SCHMEUSSER, Respondent Below, Appellee, Cross–Appellant.**

Supreme Court of Delaware.

Submitted: May 10, 1988.
Decided: May 4, 1989.

Francine R. Solomon, and Jean A. Crompton, of Crompton and Solomon, Wilmington, for petitioner below, appellant, cross-appellee.

Gerald Z. Berkowitz, of Berkowitz, Greenstein, Schagrin & Coonin, P.A., Wilmington, for respondent below, appellee, cross-appellant.

Before CHRISTIE, C.J., HORSEY, MOORE, WALSH, and HOLLAND, JJ., constituting the Court en Banc.

MOORE, Justice.

In this appeal we consider acts of fraud committed during property distribution proceedings in the Family Court. The plaintiff, Carol Schmeusser, (the "wife"), appeals a finding of the Family Court that certain misrepresentations of defendant, Lloyd Schmeusser (the "husband"), made to the Family Court, did not rise to the level of fraud. The Family Court found that certain material omissions of the defendant had occurred in violation of his duty of candor under oath. However, after applying the principles of *Stephenson v. Capano Development, Inc.*, Del.Supr., 462 A.2d 1069 (1983), the trial judge concluded that a fraud had not been committed.

We have previously held that fraud in Delaware does not consist solely of overt misrepresentations made in order to cause damage to third parties, who act in reliance upon such statements, but may also occur through deliberate concealment of facts

and silence in the face of a positive duty to speak. *Nicolet, Inc. v. Nutt,* Del.Supr., 525 A.2d 146, 149 (1987); *Stephenson v. Capano Development, Inc.,* 462 A.2d at 1074. Moreover, the very special and unique jurisdiction of the Family Court requires complete candor and fairness by parties to proceedings before it. *Cf. Bruce E.M. v. Dorothea A.M.,* Del.Supr., 455 A.2d 866 (1983). Based on the facts of record, we conclude that certain intentional and material statements and omissions of the defendant constituted fraud on both the Family Court and the wife. Accordingly, we reverse and remand.

## I.

The complicated background of this matter requires us to briefly review it for a better understanding of the context in which the issues arise on appeal. Carol and Lloyd Schmeusser were married in 1964, and were divorced in 1985. A trial on ancillary issues relating to the distribution of the marital property of the parties began on October 1, 1985, and was eventually concluded on November 1, 1985. However, these proceedings were reopened upon the wife's allegation that the husband had intentionally misrepresented the value of certain properties comprising the marital estate. After further proceedings, the Family Court agreed that the husband had acted with a "lack of candor", and had intentionally misled the court at trial. In an opinion dated June 20, 1986 the Family Court attempted to remedy the effect of these misrepresentations by accepting wife's valuation of the disputed properties and by assessing court costs and fees against husband. Under the terms of the Family Court's order, wife was awarded 45% of the marital property and partial attorney's fees in the amount of $35,000.

Wife thereafter appealed, alleging that husband's "lack of candor" during the trial rose to the level of fraud, and that the Family Court erred by refusing to void husband's transfer to his parents of a 50% equity interest in his company. Wife char-acterizes this as a "sham" transaction intended to devalue the marital estate. Finally, wife disputed the Family Court's methods and conclusions concerning the valuation and distribution of the marital estate, in the award of alimony and attorney's fees, etc.

While her appeal was pending before us, wife discovered evidence of fraud relating to the valuation of certain marital property, which was not previously heard by the trial court. Therefore, on September 29, 1986 we remanded the case to the Family Court for a determination whether this additional matter constituted a fraud on the court. In an opinion dated December 5, 1986, the Family Court declined to find that husband's additional misrepresentation constituted fraud, but did find a further "lack of candor" by the husband.

Subsequently, the appeal was argued before us and the decision of the Family Court was affirmed by our Order dated September 14, 1987. However, because we determined that certain aspects of the proceedings involved questions of exceptional importance, we granted wife's motion for rehearing of all issues en banc.

## II.

On appeal, the wife argues that the material misstatements and omissions of the husband in the property distribution proceedings were made with an intent to mislead the Family Court, and that the trial judge erred in finding that these misrepresentations were not fraudulent as a matter of law. The husband disputes this.

When the Family Court sits as a trier of fact, our scope of review is upon the law, the facts and the inferences and deductions made by the trial judge. *Wife (J.F.V.) v. Husband (O.W.V., Jr.),* Del.Supr., 402 A.2d 1202, 1204 (1979); *DuPont v. DuPont,* Del. Supr., 216 A.2d 674 (1966). In exercising our power of review, we have the duty to examine the sufficiency of the evidence and to test the propriety of the findings below. Ordinarily, we will not disturb the findings

of fact unless they are clearly wrong and justice requires their overturn. In reviewing the inferences and deductions of the trial court, we will draw our own inferences and deductions when we find that the former are not supported by the record and are not the product of an orderly and logical deductive process. *Wife (J.F.V.)* at 1204; *Levitt v. Bouvier,* Del.Supr., 287 A.2d 671, 673 (1972).

The trial judge found that the material omissions of husband were not fraudulent, even though common law fraud (or deceit) consists of:

1) a false representation, usually one of fact, made by the defendant;

2) the defendant's knowledge or belief that the representation was false, or was made with reckless indifference to the truth;

3) an intent to induce the plaintiff to act or refrain from acting;

4) the plaintiff's action or inaction taken in justifiable reliance upon the representation;

5) damage to the plaintiff as a result of such reliance.

*Stephenson v. Capano Development, Inc.,* 462 A.2d at 1074 (quoting *Nye Odorless Incinerator Corp. v. Felton,* Del.Super., 162 A. 504, 510–11 (1931); W. Prosser, *Law of Torts,* 685–86 (4th ed. 1971)).

Although the Family Court is exercising equitable powers, and in a limited sense is acting as a court of equity, the foregoing elements of common law fraud comprise the same cause of action in equity. However, a court of equity takes a much broader view of fraudulent conduct. As this Court has long held:

> Fraud is actual or constructive. Constructive fraud is a breach of legal or equitable duty which, irrespective of moral guilt, the law declares fraudulent because of its tendency to deceive others, to violate public or private confidence, or to injure public interests. It is a term applied to a great variety of transactions which equity regards as wrongful, to

which it attributes the same or similar effects which follow from actual fraud, and for which it gives the same relief as that granted in cases of actual fraud. While called constructive fraud, it is nevertheless fraud. (citations omitted).

*Italo–Petroleum Corporation of America v. Hannigan,* Del.Supr., 14 A.2d 401, 407–08 (1940). See also *Harman v. Masoneilan International, Inc.,* Del.Supr., 442 A.2d 487, 499 (1982).

■ A finding of fraud does not specifically require a determination by the trial judge that the misrepresentations were overt. Indeed, fraud may be committed through the deliberate concealment of material information, or by silence in the face of a positive duty to speak. When so required to disclose material facts, a failure to reveal information necessary to prevent statements actually made from being misleading is also fraudulent conduct. *Nicolet,* 525 A.2d at 149; *Stephenson,* 462 A.2d at 1074. With these principles in mind, we address each of wife's specific allegations of fraud.

### A. Property Located at 306 Falco Drive

■ During the original trial in November, 1985, the husband testified as an expert on his own behalf, valuing marital property in Newport, Delaware, at 306 Falco Drive at approximately $112,000. However, at a subsequent hearing on this matter in February, 1986, husband admitted that he had signed a contract of sale for the property for $145,000 in September, 1985—a month *before* he had given expert testimony on the lower value of this property in Family Court. After discovering husband's prior deceit, the trial court found a lack of "total candor" on his part and valued the property at the September, 1985 contract price of $145,000.

As the trial before the Family Court was solely designed to value the marital assets for distribution between the parties, there is no question that the existence of the September, 1985 contract for sale was ma-

terial to the valuation proceedings. Moreover, given the pre-existing contract of sale, it is clear that husband knew the true market price of the property and deliberately misrepresented this value in order to mislead the trial court. Furthermore, husband undoubtedly hoped to financially benefit from his misstatements, which were designed to induce the court to underestimate the fair market value of the property and to unfairly deprive wife of her share of the marital estate. Clearly, this was fraud upon both the Family Court and wife. It undermined the totality of wife's rights, and affected the public interests by its occurrence in a judicial proceeding. See *Italo–Petroleum, Id.*

The wife has raised an additional argument for the first time, alleging that husband failed to disclose that the property at 306 Falco Drive had been rented to third parties prior to the trial in the Family Court. However, as this matter has not previously been considered by the trial court, it is inappropriate for us to do so now. Supreme Court Rule 8. Upon remand the issue may be fully explored in the context of the legal principles we announce here.

### B. Property Located at 300 Falco Drive

Similarly, husband offered expert testimony at trial concerning another parcel of marital property, located in Newport at 300 Falco Drive. Husband estimated the value of the property at $595,000. Yet, while wife's appeal was pending before us, she discovered that Husband had previously contracted to sell the property for $740,000.

■ The record contains a signed copy of the November 27, 1985 Contract for Sale of Real Property located at 300 Falco Drive. This sales contract was executed twenty-seven days *after* husband had testified to the lower value of the same property, but approximately thirteen days *before* his Post–Trial Memorandum was filed with the Family Court. We find it quite noteworthy that husband's Post–Trial Memorandum failed to mention the valid contract for sale of the property, and that the husband was unwilling to inform the Family Court of this highly material and relevant development.[1]

■ The doctrine of "equitable conversion" has long been recognized in Delaware in connection with contracts for the sale of real property. See *Briz Ler Corp. v. Weiner*, 39 Del. Ch. 578, 171 A.2d 65 (1961); *Marsh v. Marsh*, Del.Ch., 261 A.2d 540 (1970). Equitable conversion is, of course, a well-established principle of equity, arising from consideration of a will or a contract. *Eddington v. Turner*, Del.Supr., 38 A.2d 738, 739 (1944). Under this doctrine, an executory contract for the sale of land, which requires the seller to convey legal title upon full payment of the purchase price, works an equitable conversion of the land. The execution of a contract for the sale of real property effectively transfers the seller's legal interest in the land to the purchaser, and thereafter the seller merely retains an equitable interest in the proceeds of the sales transaction. *Cf. Briz–Ler Corp. v. Weiner*, 171 A.2d at 67; *Marsh v. Marsh*, 261 A.2d at 542.

■ Based upon this doctrine, we find that husband's execution of the November 27, 1985 Contract for Sale of Real Property effected such an equitable conversion to wife's detriment. The failure to disclose it was fraudulent. Moreover, under Delaware law parties to a divorce proceeding are automatically enjoined from "transferring, encumbering, concealing or in any way disposing of any property, except in

---

1. We also consider it most serious that husband's counsel, who filed a Reply to Wife's Post–Trial Memorandum, which disclosed nothing of this sale, had drafted the installment sales contract for the very property. However, the trial court did not hold this conduct fraudulent under the *Stephenson* standard, finding that the sale had not yet been consummated as of the date the Reply was filed. Counsel had duties which are higher than the morals of the market place, and courts have an obligation to enforce that principle. *Cf. Meinhard v. Salmon*, N.Y.Ct. App., 249 N.Y. 458, 164 N.E. 545 (1928).

the usual course of business or for the necessities of life." 13 *Del.C.* § 1509. Furthermore, such parties are required "to notify the other [party] of any proposed extraordinary expenditures and to account to the Court for all extraordinary expenditures after the preliminary injunction becomes effective." *Id.* Husband's execution of a contract for the sale of real property constitutes a "transfer" of marital property for the purposes of § 1509, and his failure to so inform wife and the court of the transfer of this property further violated the provisions of § 1509.

We also find that this misrepresentation by husband was another deliberate concealment of material information from the Family Court, and succeeded in influencing the trial judge's determination of the value of 300 Falco Drive. As all elements under the *Stephenson* test are present, we find that husband's failure to inform the court of this pending executory contract constitutes an additional incident of fraudulent conduct.

### C. The Newell Coach

Finally, as part of his expert testimony before the Family Court, husband had represented the value of a motor coach owned by Active Crane, Inc., husband's wholly-owned business, at $103,000. However, subsequent to this sworn representation, wife discovered that husband had contemporaneously listed the motor coach for public sale in Oklahoma at a price of $225,000. She disclosed this to the trial court. Having considered this matter upon the reopening of the valuation proceedings, the Family Court nevertheless opined that property offered for sale is often listed at an inflated "for sale" price, a figure which does not indicate the true value of the property. Although the court held that husband's testimony contained "certain nuances that were suggestive of [his] lack of candor," it accepted husband's courtroom valuation of the Newell Motor Coach as it was the only value presented "in the orderly production of testimony."

We acknowledge that the Family Court has discretion to determine questions of property valuation. Standing alone, the husband's $103,000 valuation of the motor coach, rather than his higher concealed valuation, might be explainable, but in the total context of his deliberate campaign to violate the statutory scheme established under 13 *Del.C.* § 1509, it is not. At the very least, the matter bears on husband's credibility throughout the proceedings, and his intent to defraud.

### III.

Turning to the business entities, husband owns 100% of the common stock of Active Crane Rentals, Inc., and Custom Management, Inc., both Delaware corporations. Additionally, he owns 100% of the capital of Falco, a Delaware partnership engaging in real estate development. During the course of the trial, the Family Court generally characterized husband's ownership of these entities as marital property. However, husband argued that his parents owned a 50% "equitable interest" in these companies, and that this interest should not be considered as part of the marital estate. The trial court accepted husband's evidence and found that only 50% of these enterprises should be treated as marital property. Wife appeals that ruling.

The record, however, demonstrates that husband's father had already sold his 50% interest in Active Crane and two other businesses to husband in 1980. In return, husband's father and mother were to receive a lifetime income of $25,000 per year, preferred stock in Active Crane, and cash consideration. At trial, husband produced a variety of documents in order to support the legitimacy of the transaction and to bolster his contention that this sale was conducted with the deliberate intent to minimize the estate tax liability of his parents. All of the documents in evidence, supporting the transaction, were prepared by attorneys retained to assist husband's parents in their estate planning—except one.

Husband produced an additional document, allegedly dated December 17, 1980,

purporting to be a "side agreement" between husband and his parents. Written in tortured "legalese," it provided that:

> [d]uring the lifetime of Fred or Irene Schmeusser, should any of the assets of Falco, Active Crane Rentals, Inc., or Custom Management, Inc., be sold or disposed of, the gain from the disposition of such property shall be split fifty/fifty between Lloyd Schmeusser and Fred or Irene Schmeusser. *At any time should Fred or Irene require cash for any reason, the purpose of this agreement is to establish that Fred and Irene Schmeusser are 50% owners in the Falco, Active Crane Rental, Inc. and Custom Management, Inc. companies, and as such are entitled to 50% of the assets of the business, if they so need it.* (emphasis added)

Admittedly, this document was composed by the husband. It is totally contrary to the estate planning strategies of his parents. Indeed, it is further admitted that there was no consideration for the agreement. As will be seen, no disclosures were made to the Internal Revenue Service nor were the required taxes paid for such a "gift" back to the parents.

It is undisputed that certain of Falco's assets were sold in 1983 and 1984, resulting in capital gains to the partnership of $1,348,199 in 1983 and $187,254 in 1984. As a result of these sales, husband claims to have paid $700,000 and still owes another $167,650 to his father, allegedly in accord with their pre-existing "side agreement." However, the record clearly demonstrates that husband, alone, paid the taxes on all of the capital gains which accrued to the partnership as a result of these sales. His parents did not. Nor were gift taxes paid on the sums so received. It is clear that husband's parents did not report for Federal or state tax purposes the $700,000 already received, or the additional monies due from the sale of the partnership assets. Significantly, husband could not provide a satisfactory answer under cross-examination for these manifest irregularities. Nor could his counsel at oral argument before us.

Given all of the circumstances, the Family Court's conclusion that husband's parents had retained a 50% equity interest in these marital properties by virtue of this "side agreement", cannot be said to meet the tests of *Wife (J.F.V.) v. Husband (O.W.V., Jr.)*, 402 A.2d at 1204, and *Levitt v. Bouvier*, 287 A.2d at 673. When considered in the total context of his fraudulent conduct, the husband's inability to explain his actions, and those of his parents with respect to the glaring inconsistencies of the transaction, can lead to but one reasonable conclusion—this "agreement", like the other frauds, is nothing more than a sham transaction designed to shield marital property from the wife. If ever a case demonstrated the validity of the old legal maxim, *falsus in uno, falsus in omnibus* —false in one thing, false in everything— this is it. Upon remand 100% of the businesses shall be treated as marital property for purposes of dividing the marital estate.

## IV.

Husband's cross-appeal argues that Active Crane Rental, Inc., is a carryover of a pre-marital business of husband and his parents. The Family Court rejected this argument. We agree. There was no exchange or continuation as defined under 13 *Del.C.* § 1513(b)(3), and thus Active Crane Rental must be considered 100% marital property.

## V.

The remaining issues on appeal are affirmed for the reasons stated in our Order of September 14, 1987. However, in light of our findings here, on remand the trial court shall reconsider its earlier division of marital property, and the value of the assets which were the subject of this appeal. As an equitable proceeding, the purpose of the remand is to give the trial court a further opportunity to devise relief to fit the nature and gravity of husband's acts,

and the consequences thereof upon the wife. See *Harman,* 442 A.2d at 499.

With respect to the issues of fraud and the status of the businesses as marital property, the judgment of the Family Court is REVERSED and the matter is REMANDED for further proceedings consistent herewith. The Order dated September 14, 1987 is withdrawn. Jurisdiction is *not* retained.