IN THE SUPREME COURT OF THE STATE OF DELAWARE

| | | |
|---|---|---|
| AUSTIN L. TAYLOR, | § | |
| | § | No. 75, 2014 |
| Respondent-Below, | § | |
| Appellant, | § | Court Below: Family Court |
| | § | of the State of Delaware in |
| v. | § | and for Kent County |
| | § | |
| CHRISTINA A. TAYLOR, | § | File No. CK07-02520 |
| | § | Petition Nos. 12-35755 |
| Petitioner-Below, | § | 09-41054 |
| Appellee. | § | |

Submitted: September 10, 2014
Decided: September 23, 2014

Before **STRINE**, Chief Justice, **HOLLAND**, and **RIDGELY**, Justices.

Upon appeal from the Family Court. **REVERSED**.

Patrick C. Gallagher, Esquire, Curley & Benton, LLC for Appellant Austin L. Taylor.

Glynis Gibson, Esquire, Glynis Gibson, P.A. for Appellee Christina A. Taylor.

**STRINE**, Chief Justice.

Appellant Austin L. Taylor[1] (the "Husband") appeals from a Family Court decision denying his Motion to Reopen an Alimony Order, which was entered by the court without his participation. On appeal, the Husband argues that a default judgment was not appropriate under Rule 60(b) because he was not properly served, and he did not have a fair opportunity to contest the amount of the obligation imposed upon him.[2] Christina A. Taylor (the "Wife") opposed his motion during the proceedings at the Family Court and argues on appeal that the default alimony order should stand.

The decision to reopen an alimony order lies in the sound discretion of the Family Court.[3] But this case involves unusual circumstances, and we conclude that the Family Court abused its discretion in denying the Husband's motion to reopen.

The Husband and the Wife separated in October 2006 after 22 years of marriage.[4] The Wife filed for divorce in December of 2009, but put the proceedings on ice until March 20, 2012. Even though the Husband and the Wife were in the midst of a divorce, they remained friendly and frequently communicated with each other. Accordingly, when the Husband became a long-haul truck driver in August 2010, the Wife agreed to receive his mail at her home, the former marital residence. The Husband then changed his address on record with the Family Court to reflect that he should receive mail from the court at her address.

---

[1] This Court has assigned pseudonyms to the parties under Supreme Court Rule 7(d).
[2] Fam. Ct. R. Civ. P. 60(b).
[3] *See, e.g.*, *DiSabatino v. DiSabatino*, 922 A.2d 414 (Del. 2007).
[4] The facts set forth here have been drawn from the Family Court's opinion and the record below. *See* File No. CK07-02520 (Del. Fam. Ct. Oct. 28, 2013) [hereinafter Op.].

When the Wife filed her paperwork in March 2012 to finalize the divorce proceedings and, most important, to seek an award of alimony from the Husband, she was still communicating amicably with him. Nevertheless, she did not notify him that she had reinitiated the divorce proceedings, or that she was seeking alimony. And instead of using her address, in accordance with their arrangement, she gave the Family Court a moribund address for the Husband even though she knew he was no longer residing – or receiving mail – there. The Wife did not ask the Husband, or one of their adult daughters, with whom both parents were in contact, for the Husband's updated mailing address. The Wife also did not inform the Family Court that she had previously agreed with the Husband to receive his mail at her house. Nor did she help the Family Court in trying to determine his current address. For example, she could – and should – have provided the Family Court with the Husband's email address and cell phone number, both of which she knew. Not only that, but the Wife did not indicate that the Husband had given her the authority to change the address he had previously given the court. There is nothing in the record to suggest she had such authority.

As a result of her lack of full disclosure to both the Family Court and the Husband, he did not receive any of the paperwork related to the Wife's alimony request and he failed to respond. Notably, the Family Court did not use the address the Husband had most recently provided – the Wife's address – but instead used the outdated address the Wife listed on her paperwork without the Husband's knowledge or authorization. The Family Court entered an alimony order in his absence in July 2012, granting the Wife's request without considering the Husband's ability to pay. The Wife continued to keep

the Husband in the dark even after the order was entered; he did not learn that he owed

her alimony until he was informed by his adult daughter in September 2012.  The Wife

appears to make light of the situation in a communication between the two after the

Husband found out:

> Wife: Then I have several questions for you… #1. Are you getting your mail from Hartley??
>
> Husband: Silly you know all my mail goes to 637 Blaine dr Felton de 19943, and has for last 2 yrs since I haven't live there since then, as agreed up between you and I
>
> Wife: But… you never told the court that your addy changed.  You told [daughter] that you get mail in SC… you have mail at the Hartley address.  *You need to get it.  It'll change your life…*
>
> Husband: But my business finished with court with Child Support unless there's dirty pool in play
>
> Wife: No… we had a pending divorce since 2009…[5]

Shortly thereafter, in October 2012, the Wife filed a Rule to Show Cause petition

to enforce the alimony order.  She had apparently obtained a correct address for the

Husband, because he received these court filings, and listed the same address on his

answer approximately one month later.  As a *pro se* litigant, the Husband tried to contest

the default judgment in that answer, but he eventually hired an attorney and properly filed

a Motion to Reopen.

Despite this complicated history between the parties, the Family Court found no

basis to reopen the alimony order, and faulted the Husband for not updating his address

---

[5] App. to Opening Br. at 65 (all ellipses in original; emphasis added).

with the court.[6]  The court also found that the Wife used the only address she knew for Husband.[7]  The Wife testified that she had stopped receiving his mail at her home, other than junk mail.[8]  But she acknowledged in a communication with the Husband that she was still receiving a very important kind of mail for him: his mail from the IRS.[9]  Most important, the Wife did not claim that the Husband was receiving mail at the old address. Because the Wife was in contact with the Husband, she was in a good position to ask him, "Should I send my alimony petition to you at my house, or somewhere else?"  The record reflects that she never asked the Husband this question; instead, she impelled the Family Court to change the Husband's address of record without his knowledge or authorization.  The Family Court thus sent his important, "life changing" mail to a moribund address.[10]

As this Court has emphasized, default judgments are typically inappropriate when important rights are at stake and there has been a lack of adequate notice to the party.[11]

---

[6] *See, e.g.*, Op. at 5 ("He never provided the Court with this address, despite changing his address with his employer, and believing that Wife was opening his mail . . . ."); 9 ("But for Husband's failure to meet his obligation to update his address with the Family Court, he would have been aware that the Court had issued a divorce decree in March 2012 . . . ."); 10 ("Husband's failure to update his mailing address with the Family Court after September 2011 . . . was willful conduct . . . .  Husband is under a duty to report any address changes to the Court, especially during the pendency of litigation.").

[7] *Id.* at 3 ("The Myers Drive address was the last-known and only alternative address she had available for Husband.")

[8] App. to Opening Br. at 161; 183.

[9] In a message from the Wife to the Husband dated October 8, 2012, she asserts that "the only ma[i]l I get for you is advertisements and IRS."  App. to Opening Br. at 240.

[10] App. to Opening Br. at 65.

[11] *See Reynolds v. Reynolds*, 595 A.2d 385, 390 (Del. 1991); *Battaglia v. Wilmington Sav. Fund Soc.*, 379 A.2d 1132, 1135 (Del. 1977).

Without reaching the question of Husband's excusable neglect under Rule 60(b)(1),[12] we find that the default alimony order should have been reopened under either Rule 60(b)(3) for "fraud or other misconduct,"[13] or "in the interests of justice" under (b)(6).[14]

We do not need to conclude that the Wife's conduct was fraudulent to determine that it was indisputably "other misconduct" justifying relief under Rule 60(b)(3). The Wife had no authority to change the Husband's address with the Family Court from the one where he expected to receive mail to one she knew to be outdated. It was the Family Court's reliance on the address she provided that prevented the Husband from participating in the alimony proceedings. It was therefore not accurate for the Family Court to state that the Husband did not update his address with the court, or even worse, to find that the moribund address was the one "he claimed as his official address with the Court."[15] He did update his address to reflect the address where he wished to receive mail: her address, in accordance with his agreement with the Wife.

In plain terms, the Wife was not candid with the court. Just like attorneys have duties of candor to the tribunal, so too do parties themselves.[16] As we have noted, "the very special and unique jurisdiction of the Family Court requires complete candor and fairness by parties to proceedings before it."[17] Had the Wife been candid with the Family Court, there is no doubt that the default judgment would not have been entered against

---

[12] Fam. Ct. R. Civ. P. 60(b)(1).
[13] Fam. Ct. R. Civ. P. 60(b)(3).
[14] Fam. Ct. R. Civ. P. 60(b)(6).
[15] Op. at 3.
[16] *See* Del. Prof. Cond. R. 3.3.
[17] *Casson v. Hornberger*, 587 A.2d 454 (Del. 1991) (quoting *Schmeusser v. Schmeusser*, 559 A.2d 1294, 1296 (Del. 1989)).

the Husband.  If she had used her own address, based on their previous agreement, she would have been duty bound to pass on the appropriate paperwork to him.  The Family Court staff would have seen that the parties shared the same address, and likely inquired into the issue at that point.  The Wife would then have been required to reveal that she had agreed with him to receive his mail.  Likewise, had the Wife revealed her lack of knowledge about the Husband's current mailing address, but provided his email address and cell phone number, the Family Court probably would have contacted him directly or insisted that the Wife herself contact him to obtain his mailing address.  Put simply, had the Wife minimally complied with the duty of candor she owed the court, the Husband would have received proper and timely notice so that the issue of alimony could have been decided as it should have been, on the merits.

The Wife knew that the address she used on her paperwork in March 2012 was outdated and wrong.  She also failed to disclose to the Family Court her previous agreement to receive his mail at her house.  In our view, the Family Court failed to take into account her misconduct or the broader circumstances in the interests of justice, and thus its failure to reopen the alimony order was an abuse of discretion.[18]

---

[18] Because the Family Court did not consider the other three prongs of the Rule 60(b) test (*i.e.*, unreasonable delay, a change in outcome if the motion is granted, and prejudice to the Wife), it is not appropriate for us to reach them now on appeal.  But we briefly note that, based on the record, the Family Court could have granted the Husband's Motion to Reopen.  First, there does not seem to have been unreasonable delay.  Concededly, the Husband could have been prompter in contacting the Family Court to verify the Wife's statements that she had obtained an alimony order in his absence.  But the Family Court's depiction of the Husband as waiting from Sept. 2012, when he first learned about the alimony issue, until May 2013, when he filed a Motion for Continuance to contest the alimony order, is inaccurate.  Only six weeks passed between the date the Husband was informed of the alimony award (Sept. 10) and the date the Wife filed a Rule to Show Cause petition (Oct. 25).  The Husband responded on Nov. 18, but, unaware of the

For the foregoing reasons, the judgment of the Family Court is hereby

REVERSED.

---

required procedure as a pro se litigant, he initially used his Answer to that petition to challenge the alimony award, rather than file a separate Motion. His Answer squarely put into contest his argument that the alimony award had been inequitably determined because the Wife had not notified him about the proceedings, despite knowing where he was and agreeing to accept his mail for him. Second, the outcome would likely have changed if the Motion to Reopen was granted: the original alimony order was based solely on the Wife's request, without consideration for how much income the Husband actually earned. Even if the Husband was still employed as a truck driver, the record suggests he could not afford the amount required under the alimony order that the Wife received without the Family Court having the benefit of his then current financial status. Third, the only prejudice to the Wife was that the amount of alimony would have been determined on the merits, as it should have been originally. Any delay in making that determination would result from her own lack of full disclosure.