# IN THE SUPERIOR OF THE STATE OF DELAWARE

|  |  |  |
|---|---|---|
| MEDLINK HEALTH SOLUTIONS, LLC AND OMEGA CAPITAL MANAGEMENT PARTNERS LLC, | ) ) ) ) | |
| Plaintiffs, | ) ) ) | |
| v. | ) ) | C.A. No. N22C-09-799 FJJ |
| JL KAYA, INC., JOSE A. LAGARDERA, THE FLORIDA BUSINESS LAW FIRM, P.A. D/B/A THE BENHAYOUN LAW FIRM, AND ABRAHAM BENHAYOUN | ) ) ) ) ) ) ) | |
| Defendants. | ) | |

Submitted: February 12, 2024
Decided: March 20, 2024

*Upon Plaintiffs' Motion for Summary Judgment,*
**DENIED.**

*Upon Defendants' Motion for Summary Judgment,*
**DENIED.**

## <u>MEMORANDUM OPINION AND ORDER</u>

Richard C. Weinblatt, Esquire, Stamoulis & Weinblatt LLC, 800 N. West Street, 3rd Floor, Wilmington, Delaware 19801, Attorney for Plaintiff.

Frederick B. Rosner, Esquire, Scott J. Leonhard, Esquire, Zhao (Ruby) Liu, Esquire, The Rosner Law Group LLC, 824 N. Market Street, Suite 810, Wilmington, Delaware 19801, Ari S. Casper, Esquire, Ralph S. Tyler, Esquire, The Casper Firm, LLC, 400 E. Pratt Street, Suite 903, Baltimore, Maryland 21202, Attorneys for Defendant.

**JONES, J**

Plaintiff Medlink Health Solutions, LLC ("Medlink") alleges that Defendant JL Kaya, Inc. ("JL Kaya") fraudulently induced Plaintiff into entering a settlement agreement (the "Settlement Agreement") and then breached the Settlement Agreement. Now, Medlink asserts that it is entitled to summary judgment on its fraudulent inducement claim. JL Kaya not only opposes Medlink's position, but counters that it is entitled to summary judgment on both the fraudulent inducement and breach of contract claims.

For the reasons set forth below, the Court **DENIES** both parties' motions.

## I. FACTUAL AND PROCEDURAL BACKGROUND

### A. *The Settlement Agreement and JL Kaya's Alleged Misconduct*

JL Kaya supplies goods, such as military uniforms and tactical gear, to the federal government.[1] In the summer of 2020, JL Kaya obtained a contract with the federal government to provide "disposable isolation gowns."[2] In order to fulfill those obligations, JL Kaya entered several subcontract agreements with Medlink.[3] But disputes quickly arose between JL Kaya and Medlink, so they agreed to dissociate themselves.[4]

---

[1] Ans. to Am. Compl. ¶ 6, Sept. 28, 2023 (D.I. 42).
[2] *Id.* ¶ 7.
[3] *Id.* ¶ 8.
[4] *Id.* ¶ 9.

Efraim Diveroli led the settlement negotiations on behalf of Medlink.[5]  Mr. Diveroli, who is barred from federal contracting, has been described as a "consultant" for Medlink and Medlink's "primary agent" with regard to the JL Kaya agreements.[6]  Avigail Diveroli—Mr. Diveroli's sister[7]—signed the Settlement Agreement in her capacity as Medlink's manager.[8]

The parties signed the Settlement Agreement on January 6, 2021, and it was deemed effective as of October 1, 2020.[9]  Therein, the parties agreed to fixed prices that JL Kaya would pay to Medlink for certain categories of gowns, which were collectively defined as the "Settlement Fee Amount."[10]  To help ensure JL Kaya paid Medlink the correct amount, the Settlement Agreement required JL Kaya to produce weekly reports reflecting the number of gowns the government paid for that week.[11]  The Settlement Agreement also contained reciprocal releases, generally preventing the parties from suing each other or their respective affiliates.[12]

In a departure from those fairly routine settlement provisions, Section IV of the Settlement Agreement sought to resolve "unrelated disputes . . . between Jose A.

---

[5]  Def.'s Mot. for Summ. J., Ex. 2 (hereinafter "Ramsaran Dep.") at 103:5-19, Dec. 5, 2023 (D.I. 61).

[6]  *Id.* at 40:14-41:10; 55:5-6.

[7]  *Id.* at 172:6-7.

[8]  Am. Compl., Ex. 1 (hereinafter "Settlement Agreement") at 11, Aug. 31, 2023 (D.I. 37).

[9]  Ans. to Am. Compl. ¶ 10.

[10]  Settlement Agreement § I.B.

[11]  *Id.* at I.C.

[12]  *Id.* §§ II, III.

Lagardera and Specialized Investment Group LLC [("Specialized Investment")] and/or Omega Capital Management Partners, LLC [("Omega Capital")]."[13] The Settlement Agreement's signature page shows that Mr. Lagardera was JL Kaya's Vice President, but the Settlement Agreement contains no details about the relevance of Specialized Investment or Omega Capital. Extrinsic evidence indicates that Specialized Investment and Omega Capital are entities affiliated with Mr. Diveroli.[14]

In relevant part, Section IV of the Settlement Agreement represented that Mr. Lagardera had "rights under a judgment under a Dominican Republic court."[15] It continued that Mr. Lagardera would, through his counsel, permit Omega Capital to enforce the Dominican Republic judgment (the "DR Judgment") in accordance with certain restrictions that are not relevant here.[16] If Omega Capital's collection efforts were successful, Omega Capital would keep half of the net recovery.[17]

According to Medlink, it agreed to a reduced Settlement Fee Amount in exchange for Omega Capital receiving rights to the DR Judgment.[18] In other words, Mr. Diveroli, while representing Medlink in the settlement talks, negotiated benefits for Omega Capital at the expense of Medlink. But that ancillary agreement was a

---

[13] *Id.* § IV.
[14] Ramsaran Dep. at 34:15-16, 163:9-15.
[15] Settlement Agreement § IV.
[16] *Id.*
[17] *Id.*
[18] Ramsaran Dep. at 191:10-15; Am. Compl. ¶ 18.

sham. There never was a DR Judgment for Omega Capital to collect.[19] Medlink discovered that undisputed fact on November 10, 2021.[20]

Medlink also alleges that JL Kaya failed to provide the weekly reports required under the Settlement Agreement.[21] In support of this claim, Medlink cites to an email in which its counsel requested an update on JL Kaya's performance because the report had not been sent by close of business on Friday, January 15, 2021.[22] The record reflects that the following Monday, January 18, 2021, JL Kaya's counsel responded with an update and promised to "remind JL Kaya to send the report by Friday."[23] When questioned about the reports, Jerome Ramsaran, a member of Medlink, stated: "I believe they were provided, but I'm not sure if they were provided in their entirety. Meaning if it was provided with each payment, if you will. I have seen some, but I don't know that we have all of them."[24]

### B. *Procedural History*

The present litigation has its roots in an action brought by Omega Capital against JL Kaya and Mr. Lagardera in the Court of Chancery that resulted in a stipulated dismissal.[25] Shortly after that case was dismissed, Omega Capital and

---

[19] Pl.'s Mot. for Summ. J., Ex. G at MEDLINK0531, Nov. 1, 2023 (D.I. 49).

[20] *Id.*

[21] Am. Compl. ¶ 25.

[22] Pl.'s Mot. for Summ. J., Ex. J at MEDLINK1141.

[23] *Id.* at MEDLINK1140.

[24] Ramsaran Dep. at 126:11-15.

[25] *See* Order of Dismissal without Prejudice, C.A. No. 2022-0458-SG (D.I. 20) (Del. Ch Sept. 12, 2022).

Medlink filed suit against JL Kaya, Mr. Lagardera, JL Kaya's attorney, and the attorney's firm in this Court.[26]  In response to the defendants' motion to dismiss, the Court dismissed all of the parties except for Medlink and JL Kaya, and all of the claims except for fraudulent inducement and breach of contract.[27]

In August 2023, Medlink filed an Amended Complaint, focused solely on the claims that survived dismissal—*i.e.*, (1) fraud in the inducement and (2) breach of contract.[28]  Then, Medlink moved for summary judgment on Count I of its Amended Complaint.[29]  JL Kaya opposed Medlink's motion and cross-moved for summary judgment on both of Medlink's remaining claims.[30]

## II.  STANDARD OF REVIEW

On a motion for summary judgment, the Court's role is limited to determining whether genuine issues of material facts exist.[31]  Should such issues exist, the Court will not resolve them but will instead deny the motion.[32]  If, on the other hand, there are no genuine issues of material fact and the movant is entitled to judgment as a matter of law, the Court will grant the motion.[33]  But summary judgment will not be

---

[26]  *See* Compl., Sept. 30, 2022 (D.I. 1).
[27]  *See* Memorandum Opinion, February 9, 2023 (D.I. 19).
[28]  *See* Am. Compl.
[29]  *See* Pl.'s Mot. for Summ. J.
[30]  *See* Def.'s Mot. for Summ. J.
[31]  *Genworth Fin., Inc. v. AIG Specialty Ins. Co.*, 2023 WL 6160426, at *8 (Del. Super. Sept. 21, 2023) (citations omitted).
[32]  *Id.*
[33]  *Id*.

granted where the factual record is inadequately developed.[34] The initial burden lies with the moving party to demonstrate its position is supported by undisputed facts.[35] If the moving party does so, then the burden switches to the non-moving party to show a material dispute that requires submission to the fact-finder.[36] The Court reviews the record in the light most favorable to the non-movant to determine whether a material dispute exists.[37]

Those standards do not change when parties file cross-motions for summary judgment.[38] If both parties agree that there are no material factual disputes, "the Court shall deem the motions to be the equivalent of a stipulation for decisions on the merits based on the record submitted with the motions."[39] Nevertheless, if the Court observes a material dispute of fact or believes "a more thorough inquiry into the facts" is necessary, the Court will deny both motions.[40] In making these determinations, the Court "evaluates each motion independently."[41]

---

[34] *Id.* (citing *Ebersole v. Lowengrub*, 180 A.2d 467, 470 (Del. 1962)).
[35] *Id.* (citing *Moore v. Sizemore*, 405 A.2d 679, 680 (Del. 1979)).
[36] *Id.*
[37] *Id.*
[38] *Id.* (quoting *IDT Corp. v. U.S. Specialty Ins. Co.*, 2019 WL 413692, at *5 (Del. Super. Jan. 31, 2019)).
[39] *Id.* (quoting Del. Super. Ct. Civ. R. 56(h)).
[40] *Id.* (citations omitted).
[41] *Id.* (citing *Motors Liquidation Co. DIP Lenders Tr. v. Allianz Ins. Co.*, 2017 WL 2495417, at *5 (Del. Super. June 19, 2017), *aff'd sub nom.*, *Motors Liquidation Co. DIP Lenders Tr. v. Allstate Ins. Co.*, 191 A.3d 1109 (Del. 2018)).

### III.  PARTIES' CONTENTIONS

#### A.  *JL Kaya's Contentions*

JL Kaya challenges Medlink's fraud claim on two main bases.  For one, JL Kaya asserts that the doctrine of judicial estoppel prevents Medlink from claiming fraud relating to the DR Judgment.[42]  Second, JL Kaya argues that Medlink was not damaged by the nonexistence of the DR Judgment, depriving Medlink of standing and leaving an element of fraudulent inducement unsatisfied.[43]  Similarly, JL Kaya says the breach of contract claim must fail because Medlink was not damaged by JL Kaya's breach.[44]

Turning to the purported flaws in Medlink's claim to summary judgment on fraudulent inducement, JL Kaya only challenges the justifiable reliance and damages elements of that tort.[45]  The damages argument made in this regard is essentially the same as that made in support of JL Kaya's motion.[46]  As for justifiable reliance, JL Kaya claims Medlink did not trust JL Kaya during the negotiations and, thus, did not truly rely on JL Kaya's representations.

---

[42]  Def.'s Mot. for Summ. J. at 14-17.
[43]  *Id.* at 11-14, 17-18.
[44]  *Id.* at 18-20.
[45]  *Id.* at 20-24.
[46]  *Id.* at 22-24.

## B. *Medlink's Contentions*

Starting with its defense of its fraud claim, Medlink says that the judicial estoppel argument is meritless because it has consistently argued that the DR Judgment representation was fraudulent.[47] Medlink continues that even though it would not directly benefit from the DR Judgment, it was damaged by the fact that it accepted a reduced settlement price in reliance on the existence of the DR Judgment.[48] Medlink further asserts that the fact that it agreed to a reduced settlement price, as well testimony from Mr. Ramsaran, demonstrates Medlink's reliance.[49]

Regarding its breach of contract claim, Medlink explains that it is clear JL Kaya did not provide all of the contractually required reports on time.[50] Medlink then suggests that there must be some measure of damages flowing from that breach.[51]

## IV. DISCUSSION

### A. *Genuine Disputes of Material Fact Preclude Summary Judgment as to Count I (Fraudulent Inducement).*

A fraud claim consists of five elements: (1) a false representation by the defendant; (2) the Defendants' knowledge or belief that the representation was false,

---

[47] Pl.'s Opp'n to Def.'s Mot. for Summ. J. at 10-14, Jan. 19, 2024 (D.I. 67).
[48] *Id.* at 5-9.
[49] *Id.* at 8-9.
[50] *Id.* at 15-16.
[51] *Id.*

or the Defendants' reckless indifference to the truth; (3) the Defendants' intent to induce action or inaction by the plaintiff; (4) the plaintiff justifiably relying on the false statement; and (5) the plaintiff being damaged as a result of their reliance.[52] Here, the parties do not dispute that the first three elements are met, so the issues are limited to Medlink's justifiable reliance and the resulting damages. There are genuine factual disputes as to both of those issues, though, so both parties' motions for summary judgment are denied as to Count I.

### 1. Plaintiffs' Argument is not Barred by Judicial Estoppel.

As a preliminary matter, JL Kaya has raised judicial estoppel as a basis to preclude Medlink's DR Judgment-based fraud claim. According to JL Kaya, Medlink's initial complaint focused on false inflation of production costs as the basis of Medlink's fraud claim; thus, JL Kaya argues Medlink is estopped from changing theories.[53] This argument is devoid of merit.

Judicial estoppel prevents a party from contradicting a position that it previously convinced a court to accept.[54] That simply has not happened here. In Paragraphs 45 to 52 of the initial complaint—which are part of the fraudulent inducement Count—Medlink outlined the DR Judgment misrepresentation and said

---

[52] *Everphone, Inc. v. Go Tech. Mgmt., LLC*, 2023 WL 7996560, at *8 (Del. Super. Nov. 17, 2023) (quoting *E.I. DuPont de Nemours & Co. v. Fla. Evergreen Foliage*, 744 A.2d 457, 461-62 (Del. 1999)).
[53] Def.'s Mot. for Summ. J. at 14-16.
[54] *Flagler Hldgs. VI Beta, Inc. v. Airline Accommodations Sols., LLC*, 2023 WL 9053669, at *4 (Del. Super. Dec. 19, 2023) (citations omitted).

Medlink relied on that lie to its detriment.[55]  That is the same argument Medlink makes now.  Likewise, Medlink's opposition brief at the motion to dismiss stage listed "the existence of, and the collection of a Dominican Republic Judgment, payable to Omega" as a "primary misrepresentation[]" in this case.[56]  The Court fails to see any basis to claim that Medlink's current argument somehow contradicts its prior position.

### 2. There is a Genuine Dispute as to Medlink's Fraud Damages.

JL Kaya's next argument is that because Omega Capital, not Medlink, was intended to benefit from the DR Judgment, Medlink was not damaged by JL Kaya's misrepresentation.[57]  But that argument misconstrues the nature of Medlink's claim.  Medlink does not argue that it was entitled to the proceeds from the DR Judgment and was damaged by not being able to collect the non-existent judgment.  Instead, Medlink's claim to damages is that it "agreed to a lower payment per Gown in exchange for the terms regarding the Dominican Judgment."[58]  That is a valid theory of damages.  In essence, part of the consideration for which Medlink bargained—*i.e.,* a benefit to Omega Capital[59]—never existed.  Fraud damages are available

---

[55]  Compl. ¶¶ 45-52.
[56]  Pl.'s Opp'n to Def.'s Mot. to Dismiss at 6-7, Jan. 10, 2023 (D.I. 17).
[57]  Def.'s Mot. for Summ. J. at 12-13.
[58]  Am. Compl. ¶ 19; *see also* Pl.'s Mot. for Summ. J. at 8 ("Medlink sought a higher payment per gown until the terms involving the Dominican Republic judgment were inserted into the agreement.").
[59]  Though it may not be a common business practice to confer a gift upon a distinct entity, nothing precluded Medlink from doing so.  This transaction makes more sense given Mr. Diveroli's

where the actual value of a transaction is less than the represented value of that transaction.[60]

While Medlink has a viable theory of damages, it is still just a theory. That precludes summary judgment. To prove that the DR Judgment provision caused Medlink to accept a reduced Settlement Fee Amount, Medlink relies on drafts of the Settlement Agreement that show the parties contemplated a higher Settlement Fee Amount before the DR Judgment terms were added to the deal.[61] However, Medlink has no direct evidence that those alterations to the Settlement Agreement drafts were causally connected. Thus, there is a question about whether the inclusion of the DR Judgment caused the reduction in the Settlement Fee Amount, or whether the timing of those changes in the drafts was merely coincidental. That question is one of fact, not law, and is therefore irreconcilable at this stage.[62]

---

overlapping roles. Indeed, in an email sent during negotiations, JL Kaya's attorney described the DR Judgment transaction; but, instead of saying Omega Capital would benefit, the email said, "[JL Kaya] would allow <u>Efraim</u> to work on it and divide the proceeds 50-50 of what remains after costs." Pl.'s Mot. for Summ. J., Ex. F at MEDLINK0390 (emphasis added). So, it appears that the benefit to Omega Capital was truly intended to benefit Mr. Diveroli, who negotiated the Settlement Agreement for Medlink.

[60] *See LCT Cap., LLC v. NGL Energy Partners LP*, 249 A.3d 77, 91 (Del. 2021). This damage serves as the injury-in-fact required for standing. *See Albence v. Higgin*, 295 A,3d 1065, 1086 (Del. 2022).

[61] Pl.'s Mot. for Summ. J. at 8.

[62] *See Burgos v. Lowe's Home Centers, LLC*, 2024 WL 510880, at *2 (Del. Super. Feb. 8, 2024) ("[W]hen the facts permit a reasonable person to draw <u>but one inference</u>, the question becomes one for decision as a matter of law." (emphasis added)(citing *Wooten v Kiger*, 226 A.2d 238, 239 (Del. 1967))).

As a final point, JL Kaya makes much of Mr. Ramsaran inability to provide a calculation of Medlink's damages at his deposition.[63] But that argument goes to the *amount* of Medlink's damages, not the *existence* of Medlink's damages. "On summary judgment, the non-movant need only present some credible evidence that supports a claim for damages. Even if damages will be difficult to prove at trial, a lack of precise damages does not justify summary judgment."[64] Here, the drafts of the Settlement Agreement provide credible, albeit not decisive, evidence of Medlink's damages. Relatedly, the available drafts help prevent Medlink's damages from being unduly "speculative or conjectural."[65] Accordingly, while Medlink's claim for damages is not enough to entitle Medlink to summary judgment, it suffices to defeat JL Kaya's cross-motion.

### 3. There is a Genuine Dispute as to Medlink's Justifiable Reliance.

In challenging Medlink's motion, JL Kaya argues that Medlink's justifiable reliance on JL Kaya's representation is a genuinely disputed fact.[66] Specifically, JL Kaya references a December 17, 2020 email sent by Mr. Diveroli that states:

> They are clearly playing games with costs and invoices and intend to throughout. We need to settle ASAP and then sue on the first whiff of

---

[63] Def.'s Mot. for Summ. J. at 22-23.

[64] *Torrent Pharma, Inc. v. Priority Healthcare Distrib., Inc.*, 2022 WL 3272421, at *13 (cleaned up) (citations omitted).

[65] *Hammann v. Adamis Pharms. Corp.*, 2023 WL 5424109, at *10 n.96 (quoting *Henne v. Balick*, 146 A.2d 394, 396 (Del. 1958)).

[66] Def.'s Mot. for Summ. J. at 20-22.

any impropriety to get the real documents and likely solidify a fraud case that will be a major expensive headache for him.[67]

Viewing that evidence in the light most favorable to JL Kaya, as is required in assessing Medlink's motion, it is reasonable to infer that Medlink did not justifiably rely on JL Kaya's representations.

Medlink correctly points out that the quoted email pertained to costs and invoices, not the DR Judgment.[68]   But Mr. Diveroli's comment nevertheless demonstrates that distrust was present in the parties' negotiations.  Delaware courts have long recognized "the old legal maxim, *falsus in uno, falsus in omnibus*—false in one thing, false in everything."[69]  It is at least reasonable to infer that based on similar principles, Medlink's distrust of JL Kaya's "costs and invoices" extended to a more general distrust of JL Kaya.  Moreover, even assuming Medlink relied on the DR Judgment representation, Mr. Diveroli's email raises questions about whether Medlink was justified in doing so since it indicates Medlink may have been aware of potential deceit.  These factual questions, like those relating to damages, preclude summary judgment on Medlink's fraud claim.[70]

---

[67]  Pl.'s Mot. for Summ. J., Ex. F at MEDLINK0393.

[68]  Pl.'s Opp'n to Def.'s Mot. for Summ. J. at 9.

[69]  *Schmeusser v. Schmeusser*, 559 A.2d 1294, 1300 (Del. 1989).

[70]  *See Columbus Life Ins., Co. v. Wilm. Tr. Co.*, 2023 WL 1956868, at *9 (Del. Super. Feb. 13, 2023) ("[W]hether one's reliance was reasonable generally is a question of fact that cannot be determined on summary judgment." (alteration in original) (quoting *Vague v. Bank One Corp.*, 2004 WL 1202043, at *1 (Del. May 20, 2004))).

**B.** ***JL Kaya is not Entitled to Summary Judgment on Count II (Breach of Contract).***

The final issue is JL Kaya's argument that Medlink's breach of contract claim fails as a matter of law for lack of damages.[71] Medlink's response is essentially that where there is a breach, damages naturally follow.[72] Though the damages may only be nominal, Medlink is correct.

There are three traditionally enumerated elements to a breach of contract claim: (1) the existence of a valid contract; (2) the Defendants' breach of an obligation imposed by that contract; and (3) resultant damage to the plaintiff.[73] But the third element—which JL Kaya now relies on—"is something of an overstatement."[74] "That is because any 'unexcused failure to perform a contract is a legal wrong. An action will therefore lie for the breach although it causes no injury.'"[75] In such a situation a small award of nominal damages is appropriate to recognize, if not remedy, the breach.[76]

Here, Medlink has made no real attempt to show, and may be unable to show, economic injury flowing from JL Kaya's alleged failure to provide the contractually

---

[71] Def.'s Mot. for Summ. J. at 18-19.
[72] Pl.'s Opp'n to Def.'s Mot. for Summ. J. at 2, 15-16.
[73] *Cygnus Opportunity Fund, LLC v. Wash. Prime Grp., LLC*, 302 A.3d 430, 454 (Del. Ch. 2023) (quoting *VLIW Tech., LLC v. Hewlett-Packard Co.*, 840 A.2d 606, 611 (Del. 2003)).
[74] *Id.*
[75] *In re P3 Health Grp. Hldgs., LLC*, 2022 WL 16548567, at *10 (Del. Ch. Oct. 31, 2022) (quoting 24 *Williston on Contracts* § 64:9 (4th ed.))
[76] *See, e.g., id.*; *Cygnus Opportunity Fund*, 302 A.3d at 454; *Ivize of Milwaukee, LLC v. Complex Litig. Support, LLC*, 2009 WL 1111179, at *12 (Del. Ch. Apr. 27, 2009).

mandated reports. But, as explained, "[e]ven if compensatory damages cannot be or have not been demonstrated, the breach of a contractual obligation often warrants an award of nominal damages."[77] Thus, Medlink's failure to demonstrate compensable damages under its breach of contract claim does not cause that claim to fail.[78]

## V. CONCLUSION

In sum, there are genuine disputes of material facts regarding the justifiable reliance and damages elements of Medlink's fraudulent inducement claim. And Medlink's lack of demonstrated damages does not defeat its breach of contract claim.

Accordingly, Medlink's Motion for Summary Judgment on Count I is **DENIED**; and JL Kaya's Motion for Summary Judgment is **DENIED**.

**IT IS SO ORDERED.**

*/s/ Francis J. Jones, Jr.*
Francis J. Jones, Jr., Judge

---

[77] *Ivize*, 2009 WL 1111179, at *12 (citing *Palmer v. Moffat*, 2004 WL 397051, at *4 (Del. Super. Feb. 27, 2004)).

[78] JL Kaya cites two cases for the proposition that "[b]reach of contract claims have failed on more evidence of damage than Medlink offers." Def.'s Mot for Summ. J. at 19. Neither persuades. In one of the cases—*Universal Enter. Grp., L.P. v. Duncan Petrol. Corp.*, 2013 WL 3353743 (Del. Ch. July 1, 2013)—the Court of Chancery actually granted relief on the plaintiff's breach of contract claim because the plaintiff demonstrated $1,497,429 in actual damages, even though the plaintiff failed to prove rescissory or diminution-in-value damages. *Id.* at *18-20. In contrast, JL Kaya's other authority—*Welsh v. Worthy*, 2011 WL 13175147 (Del. Com. Pl. June 15, 2011)— does support JL Kaya's position. However, when forced to reconcile recent precedent from multiple Court of Chancery opinions that collectively cite compelling authority, including well-respected treatises, with a decade-old Court of Common Pleas decision that cites only to another Court of Common Pleas opinion for this point, the Court respectfully relies upon the more recent precedent.